**IN THE COURT OF APPEALS OF IOWA**

No. 13-1854
Filed February 11, 2015

**IN RE THE MARRIAGE OF TERRY L. CARLSON**
**AND WILLIAM J. CARLSON**

**Upon the Petition of**
**TERRY L. CARLSON,**
        Petitioner-Appellee,

**And Concerning**
**WILLIAM J. CARLSON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


        A former husband appeals from the entry of a military pension division

order.  **REMANDED WITH DIRECTIONS.**



        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

        Catherine C. Dietz-Kilen of Harrison & Dietz-Kilen, P.L.C., Des Moines, for

appellee.



        Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

A former husband appeals from the entry of a military pension division order, contending the order violates federal law prohibiting the division of disability benefits. *See* 10 U.S.C. § 1408(a)(4)(C) (defining "disposable retired pay," which is subject to division, and specifically excluding disability pay). For the reasons that follow, we modify the military pension division order.

**I. Background Facts and Proceedings.**

William and Terry were married on October 1, 1994, and had two children together. During the marriage, William served as a fulltime member of the Iowa National Guard. The district court dissolved the parties' marriage by decree entered on September 21, 2012. At the time of dissolution, William, age forty-three, was a lieutenant colonel in the Guard with annual earnings of $128,353.92. Terry, age forty-two, was the primary caregiver for the children, working part-time as an aid in a special education classroom with annual earnings of $24,062.40. The decree describes both parties as being in "excellent physical and mental health."

The dissolution court found traditional alimony was not warranted; however, the court ordered William to pay rehabilitative alimony of $2000 per month for two years. William was also to pay monthly child support of $1003.68 for the two children. The court divided the marital assets and ordered William to pay Terry a cash settlement of $11,775.20. The district court found William's military pension was a defined benefit plan, which was to be divided under the

*Benson* formula.[1] The court ordered the parties to "consult regarding whether Petitioner Terry wants to take and pay for survivor's benefits. [Terry's] counsel shall prepare a [Qualified Domestic Relations Order] QDRO to accomplish the division of the pension."

On October 8, 2012, William filed a motion to reconsider, enlarge, and amend, in which he requested, in part, that the court amend the decree to provide for the immediate sale of the marital residence, rule that the parties equally share any profit or deficiency, and adjust the equalization payment. Terry responded and filed her own motion to enlarge and amend. On October 19, the court amended the decree, requiring the sale of the marital residence and ordering the parties "to consult and agree to the equalization payment necessary to complete the property distribution ordered in the decree as amended."

Thereafter, there were ongoing skirmishes between the parties related to the transfer of assets and compliance with previous orders. The court held additional hearings and issued rulings on the parties' motions. At issue here is the court's ruling related to Terry's motion to enter a military pension division order, which was heard at the same time (August 26, 2013) as William's motion to recalculate the equalization payment following the sale of the residence.

At the hearing, Terry's counsel argued Terry had rejected the model military pension division order submitted by William "because it doesn't contain any provision that would make sure that Terry is protected in the event that

---

[1] *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996). Under that formula, the court awards the spouse a percentage of the pension based on years of marriage during the accumulation of pension contributions that is payable when the benefits mature. *Benson*, 545 N.W.2d at 255; *see also In re Marriage of Brown*, 776 N.W.2d 644, 649-50 (Iowa 2009).

[William] makes changes to his military retirement." In response, William's counsel stated:

> Your honor, [William] doesn't intend to shift any funds. He would agree to a provision added to the proposed QDRO that I prepared for the Court that requires that he not do anything to shift any funds or to lower the amount that Terry would receive. Quite honestly, if [William] becomes disabled, Terry shouldn't benefit from that disability. And any amounts that he would receive should not be awarded to Terry.

On August 28, 2013, the district court entered a military pension division order, which includes these provisions:

> 6. Currently, there is no waiver in place for disability payments, and the Court bases the award to Petitioner [Terry] set out below on these facts.
> . . . .
> 8. [Terry] shall receive her full share of Respondent's [William's] military retired pay, calculated as set out below and without reduction for disability payments (VA disability pay, disability severance pay, military disability retired pay, or any other reason). For the purposes of settlement herein, military retired pay includes retired pay actually paid or to which [William] would be entitled based only on length of [William's] creditable service.

The court ordered:

> 1. For all uniformed services retired pay received after September 21, 2012, [William] shall pay [Terry] fifty percent (50%) of the marital share of his disposable retired pay each month, not to exceed fifty percent (50%) of disposable retired pay. The marital share is a fraction made up of two hundred four (204) months of marital pension service, divided by the total months of Respondent's military services.
> 2. [William] has served at least ten (10) years of creditable service concurrent with at least ten (10) years of marriage to [Terry]. [Terry] is entitled to direct payments from [Defense Finance and Accounting Service] DFAS.
> 3. [Terry] shall receive payments at the same time as [William] . . . .
> 4. [William] shall provide to [Terry] a Restricted Access PIN which she can use to access the *myPay* system through the DFAS website so that she can verify that she is, in fact, receiving her full share of [William's] retired pay each month. . . .

5. When DFAS has determined that this Order meets the requirements of the applicable federal law as a military pension division order, then it shall carry out the provision of this order and shall give written notice to [Terry] . . . that this order complies with said requirements.

. . . .

10. The parties are responsible and accountable to this court for good faith and fair dealing in complying with the terms of this order. [William] shall not unilaterally undertake any course of action which undermines this order or frustrates the intent of the court. He shall release, hold harmless and indemnify [Terry] as to any actions he takes which reduce her allocated benefits. The court will retain continuing jurisdiction to modify the pension division payments or the property division specified herein, or to award compensatory alimony or damages, if [William] should waive military retired pay in favor of disability payments or take any other action (such as receipt of severance pay, bonuses or an early out payments) which reduces the amount or share [Terry] is entitled to receive. In addition, the court retains authority over this award to ensure that [Terry] shall receive her proper share, that such other remedies as may be necessary are still available to [Terry], that [William] acts in good faith in carrying out the terms of this order, that he indemnifies her in the event of any reduction of her amount or share due to his actions, and that the intent of this order will be carried out by both parties in full.

11. If Respondent shall attempt to waive or convert any portion of his military service, whether active duty or Guard/Reserve, into federal or state civil service time, without first obtaining [Terry's] consent, and the effect of this action is that her benefits would be reduced, then:

a. [Terry] shall receive either:

i. Alimony equal to the amount or share of the military pension that she was entitled to receive before any waiver (with cost-of-living adjustments, if applicable), and not terminating at her remarriage or cohabitation; or

ii. A portion of the federal retirement annuity (FERS) that provides [Terry] an amount equal to what she would have received as her share of the military pension had there been no waiver to obtain an enhanced federal retirement annuity.

b. In the event of such conversion, pursuant to 5 U.S.C. § 8411(c)(5), [William] shall authorize the Director of the Office of Personnel Management to deduct and withhold (from the annuity payable to [William]) an amount equal to the amount that, if the annuity payment were instead a payment of [William's] military retired pay, would have been deducted, withheld, and paid to [Terry] under the terms of this Order. The amount deducted and withheld under this subsection shall be paid to [Terry].

c. [William] shall also notify [Terry] immediately if he accepts employment with the federal government, and shall include in said notification a copy of his employment application and his employment address. Any subsequent retirement system of [William] is directed to honor this court order to the extent of [Terry's] interest in the military retirement and to the extent that the military retirement is used as a basis of payments or benefits under the other retirement system, program, or plan.

12. [William] shall not elect to receive a CSB/Redux bonus. If [William] does make such an election, then:

a. He shall promptly provide to [Terry] a copy of any election form he executes as to any bonus or option which affects his retire pay; and

b. He shall indemnify [Terry] for any loss she incurs (including fees, costs, expenses and damages). In the event of such loss or reduction, the court shall award [Terry] an equitable adjustment of her pension division award herein.

c. The remedy shall be to increase [Terry's] share of the pension to make up for the decrease caused by CSB/Redux, but—upon application by [Terry]--the court may allow her an equitable share of the bonus received by [William] or award such other equitable relief as is just and proper, including the reallocation of marital/community property.

13. If [William] breaches this order and also fails to provide [Terry] with his date of retirement, last unit of assignment, final rank or grade, final pay, present and past retired pay and current address, then he authorizes [Terry] to request and obtain this and other information from the Department of Defense and from any department or agency of the U.S. Government.

14. If either party shall violate this court order, then the court shall indemnify the party seeking enforcement and shall award damages, interest, at the statutory rate, and reasonable expenses and attorney's fees to that party.

. . . .

17. The parties shall comply with the terms of this order in good faith and shall notify the court and the other party if there are any substantial changes which would impact the retired pay of [William]. Examples of this include election by [William] of VA disability compensation or Combat-Related Special Compensation, either of which would diminish the available retired pay of [William] (thus reducing the share for [Terry]). If [William] takes any action to diminish the share of [Terry] of his military retired pay, then this court reserves jurisdiction to amend the pension division terms to increase [Terry's] share of [William's] retired pay, pursuant to *White v. White*, 142 N.C. App. 588, 568 S.E.2d 283 (2002).

William filed a motion to reconsider the military pension division order, arguing that contrary to federal law prohibiting division of Veterans Administration disability benefits, the division order "contains specific provisions regarding [William's] disposable retired pay; [his] ability to waive retired pay in favor of disability compensation; and [Terry's] right to additional compensation should [William] receive disability benefits." The district court denied the motion stating: "Counsel for the Petitioner [Terry] shall submit the Military Pension Division Order entered by this Court on August 28, 2013, to the Defense Finance and Accounting Service [(DFAS)] to determine if the Order meets the requirements of the applicable federal law as a Military Pension Division Order."

William now appeals.

## II. Scope and Standard of Review.

Ordinarily our review of dissolution proceedings is de novo. *See* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). But the parties' disagreement involves interpretation and application of a federal statute, and involves the trial court's construction of its own decree and order. Our review is thus for the correction of errors at law. *See Benton v. Slater*, 605 N.W.2d 3, 4 (Iowa 2000) (holding review is for correction of errors at law in an equity action where the sole question is whether district court properly applied the law).

## III. Discussion.

On appeal, William contends the military pension division order contains a number of provisions imposing unnecessary requirements on him and additional safeguards for Terry that were not ordered or contemplated by the original decree, and further, contains provisions that violate federal law.

As explained in *In re Marriage of Howell*, 434 N.W.2d 629, 631 (Iowa 1989), "Iowa law has generally treated pension benefits as marital property" subject to division by dissolution decree. However:

> In *McCarty v. McCarty*, 453 U.S. 210 (1981), the United States Supreme Court held that military retirement pay was a personal entitlement of the retiree and that it was not an asset subject to distribution under California property laws. [*McCarty*, 453 U.S.] at 236. The Court suggested that the protection of spouses of military retirees was properly left to congress. *Id.* at 235-36.
>
> In the wake of *McCarty,* we held that a military pension could not be divided as marital property. *See In re Marriage of Jones,* 309 N.W.2d 457, 460-61 (Iowa 1981). Income from a military pension could, however, be considered in awarding alimony. *Id.* at 461. *Jones* was based on the then-existing law concerning treatment of military pensions under *McCarty.*

*Howell*, 434 N.W.2d at 631.

Congress then passed the Uniformed Services Former Spouses' Protection Act (USFSPA), which authorizes state courts to treat disposable retired pay as marital property. 10 U.S.C. § 1408(c)(1). The Iowa Supreme Court stated the effect of the USFSPA "was to reverse *McCarty* and to return this decision to the state as it was prior to *McCarty*." *Howell*, 434 N.W.2d at 631. The court held that "military pension is marital property to be divided equitably by [divorcing] parties." *Id.* at 632.

However, the court also stated:

> We reject the reasoning of *Kruger* [*v. Kruger*, 375 A.2d 659, 663-64 (N.J. 1974),] which considers a veteran's disability payment to be the same as a military pension. A disability payment to a retired service member injured in the line of duty cannot be considered compensation for past services rendered. Furthermore, veteran's disability benefits are statutorily exempt from all claims other than claims of the United States, and are not divisible or assignable. *See* 38 U.S.C.A. § 3101 (West Supp. 1988); *see also In re Marriage of Bornstein,* 359 N.W.2d 500, 503-04 (Iowa Ct. App.

1984); *Repash v. Repash,* 528 A.2d 744, 746 (Vt. 1987). While this type of disability payment may be considered in the equitable granting of alimony or support, we do not consider it marital property.

*Id.* at 632-33. This reasoning is consistent with the United States Supreme Court's recognition in *Mansell v. Mansell*, 490 U.S. 581, 589 (1989), that while the USFSPA authorizes state courts to divide disposable retired pay, the act explicitly excludes disability payments from the definition of disposable retired pay. *See* 10 U.S.C. § 1408(a)(4)(C).

On appeal, William argues the military pension division order violates the USFSPA and *Mansell*, as well as improperly modifying the dissolution decree. Terry asserts the "real issue" is "after the state of Iowa has awarded a non-military spouse a property interest in a military pension, can the military spouse unilaterally diminish the property awarded to the former spouse by waiving a portion of the pension, to instead receive disability pay, without indemnifying the non-military spouse?" She proposes the answer is "no," arguing the provisions contained in the order here are similar to provisions this court allowed in *In re Marriage of Gahagen*, No. 03-1731, 2004 WL 1813601, at *1 (Iowa Ct. App. 2004), which she acknowledges is unpublished and offers only persuasive value.

First, we note there is no evidence William is disabled. The decree states he is in "excellent physical and mental health." His counsel stated at the hearing that William does not intend to shift any funds and would agree to a provision requiring he not shift funds or lower the amount Terry is to receive.

In addition, even if we afford *Gahagen* persuasive value, it does not provide authority for the inclusion of several of the provisions contained in the

military pension division order entered here. In *Gahagen*, the district court included a provision that stated:

> If [military retiree] receives disability pay or civil service income and this event causes a reduction of [retiree's] disposable retired pay, thus reducing [former spouse's] share thereof, [retiree] will pay to [former spouse] directly each month any amount that is withheld from [former spouse] by DFAS for the above reason.

In upholding the order, this court was swayed by two cases from other jurisdictions, *Abernathy v. Fishkin*, 699 So. 2d 235, 240 (Fla. 1997), and *In re Marriage of Nielsen*, 792 N.E.2d 844, 849 (Ill. Ct. App. 2003), both of which upheld provisions in dissolution decrees that required a military former spouse who elects to waive some or all of their military pension in order to collect veteran's disability benefits to "make up" the amount the former spouse would have received so long as it is from assets other than disability benefits. *See Gahagen*, 2004 WL 1813601, at *4-5. This court explained that the provision at issue in the *Gahagen* decree,[2] "simply requires that [military retiree] James pay [former spouse] Mary Ann a 'make-up' amount equal to any reduction in her

---

[2] The military pension division order in *Gahagen* was described by the appellate court as follows:

> The court ordered that effective upon James's retirement from the Army he pay Mary Ann fifty percent of the marital share of his "disposable retired pay each month." The Court defined the martial share as "a fraction made up of 228 months" of marital pension service, divided by the total months of James's military service. The court further ordered that
>
> > If [James] receives disability pay or civil service income and this event causes a reduction of [James's] disposable retired pay, thus reducing [Mary Ann's] share thereof, [James] will pay to [Mary Ann] directly each month any amount that is withheld from [Mary Ann] by DFAS for the above reason.
>
> In addition, the order stated, "It is intended that [Mary Ann] shall receive her full share of [James's] military retired pay, calculated as set out below and without reduction for civil service income, disability pay or any other reason."

2004 WL 1813601, at *1.

monthly share of his retirement pay which is caused by his election to reduce his retirement pay by receiving veterans' disability benefits or civil service income." *Id.* at *5. However, we stressed that this "make up" order is allowable "only if and to the extent [the military retiree] is able to do so with a source of funds other than any veterans' disability benefits." *Id.*

Many of the provisions included in the Carlson military pension division order, however, go well beyond simply requiring a "make-up" amount equal to any reduction in Terry's monthly share of William's retirement pay that might occur should he elect to reduce his retirement pay by receiving veterans' disability benefits.

For example, paragraph 10 of the Order purports to grant continuing jurisdiction to the district court to "modify the . . . the property division specified." Iowa Code section 598.21(7) (2011) specifically states, however, "[p]roperty divisions made under this chapter are not subject to modification." The *Gahagen* opinion recognized that prohibition. *See* 2004 WL 1813601, at *5 ("Under Iowa law, 'absent fraud, duress, coercion, mistake, or other similar grounds which would support modification of an ordinary judgment, property settlements in dissolution decrees are not subject to modification.' Therefore, relief in situations such as in this case cannot occur through modification of the decree's property division." (citation omitted)).

Paragraph 11 seems to authorize a modification of the decree if William even "attempt[s] to waive or convert any portion of his military service . . . without first obtaining [Terry's] consent." No authority for such a provision has been presented to us.

Paragraphs 12 and 17 preempt William's election of benefits to which he may be entitled. *Gahagen* offers no authority for such provisions. Moreover, paragraph 12 directs William to notify Terry "immediately if he accepts employment with the federal government, and shall include in said notification a copy of his employment application and his employment address," and further directs William "to honor this court order to the extent of [Terry's] interest in the military retirement and to the extent that the military retirement is used as a basis of payments or benefits under the other retirement system, program, or plan." All of which go well beyond the directive of the dissolution decree that petitioner's counsel "prepare a QDRO to accomplish the division of the pension."

We strike paragraphs 8 and 9 of the findings of fact, as well as the decretal paragraphs 10, 11, 12, 13, 14,[3] and 17 of the military pension division order and remand for entry of substituted order. The following paragraph shall be included in the substituted order:

> If [the military retiree] receives disability pay or civil service income and this event causes a reduction of [retiree's] disposable retired pay, thus reducing [former spouse's] share thereof, and only if and to the extent [the military retiree] is able to do so with a source of funds other than any veterans' disability benefits, [the military retiree] will pay to [former spouse] directly each month any amount that is withheld from [former spouse] by DFAS for the above reasons.

## IV. Appellate Attorney Fees.

Terry has requested an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider the

---

[3] Paragraphs 13 and 14 quoted above at page six go beyond the district court's original order that counsel shall prepare a QDRO to accomplish the division of the pension.

needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* We deny Terry's request for appellate attorney fees. Costs are taxed to Terry.

**REMANDED WITH DIRECTIONS.**