In re the MARRIAGE OF Janel
WILL and Dwight Will.

Upon the Petition of Janel
Will, Appellee,

and

Dwight Will, Appellant.

No. 91–687.

Supreme Court of Iowa.

July 22, 1992.

Jacob J. Peters of the Peters Law Firm, P.C., Council Bluffs, for appellant.

Joanne C. Lorence of Otto, Lorence & Barry, Atlantic, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ and ANDREASEN, JJ.

ANDREASEN, Justice.

In a dissolution of marriage decree, the district court granted physical care of the oldest minor child to the father and the two youngest children to the mother. The court ordered the father to pay alimony and child support, and divided the property of the parties. The father appealed. The court of appeals affirmed the dissolution, but modified the decree to grant the father physical care of all the children. The court also modified the child support and property divisions of the decree. Upon the mother's application, we granted further review. Because we find the physical care of the two youngest children should be with the mother, we affirm the district court's custody and physical care order. We modify various economic and child support provisions of the decree.

I. *Background.*

Janel and Dwight Will were married in 1969. Four children were born of the marriage: Dana, Wendy, Cody, and Chance. Dana is presently twenty-three years old and is not a subject in this appeal. Wendy expressed a desire to reside with her father. Janel honored that desire and does not seek custody of Wendy. Both parents seek physical care of the two youngest boys.

The primary subject of this appeal are the boys. Cody and Chance are close in age; Chance is two years younger than Cody. There is a seven-to-nine-year age difference between Wendy, who is seventeen, and the two boys who are eleven and nine.

Dwight and Janel lived on a farm. Dwight is engaged in farming, custom livestock feeding, and trucking. Until their separation, Janel was the primary caretaker of the children. She is an hourly employee at a local care center.

In January 1990, Janel filed a petition for dissolution of marriage. At about the time of the filing of the petition, Janel moved out of the marital home. She moved into an adjacent farmhouse owned by Dwight's family. At that time, the parties were sharing custody of the children; no temporary custody or support order had been issued. The boys spent about equal time with each parent.

In February 1990, Janel left Iowa with Cody and Chance and moved to California. Janel told Dwight about the move only after she was on her way and had in fact reached Colorado. The move was predicated on Janel's belief that Dwight was attempting to alienate the boys from her and on the advice of her then attorney.

Upon learning that Janel had moved with the boys, Dwight immediately filed an application for temporary custody. Neither Janel nor her attorney appeared at the hearing on the application, and the court awarded temporary physical care of the boys to Dwight. Dwight went to California and returned the boys to Iowa. Janel also immediately returned to Iowa.

Upon her return, Janel moved into an apartment with a woman friend. The apartment was located in Atlantic, Iowa, approximately ten-to-fifteen miles from the marital home. Janel does not own a car, but her friend has provided her with transportation. She exercised visitation with the boys as provided in the temporary custody order.

The hearing on the dissolution petition took place in February 1991. Each party attempted to show what a poor parent and terrible person the other was. There was also evidence presented tending to show that the girls did not get along with Janel and that they were attempting to alienate the boys from Janel.

There was a strong undercurrent in Dwight's case that Janel had begun to express homosexual tendencies and that she was romantically involved with the friend with whom she lived upon her return to Iowa from California. Janel consistently denied these allegations.

After the hearing, the court dissolved the marriage. The court awarded joint custody of the three minor children to both parties.

However, the court split the physical care of the children. Wendy was placed in Dwight's physical care; Cody and Chance were placed in Janel's physical care. Visitation rights were provided each parent.

Each party was ordered to pay child support. The court calculated the amount of child support as provided in the guidelines and then set off the amounts. Finding the split custody arrangement was a special circumstance, the court deviated from the guidelines amount and ordered Dwight to pay $500 per month in child support to Janel for Chance and Cody. The order also provided for the support to be increased $50 per month when Wendy became ineligible for support.

The court awarded Dwight the farming assets and the farm homestead, but awarded Janel a lien and judgment against the property in the amount of $35,000. The court established a schedule for the payment of the lien with $10,000 to be paid in 1991, and $5000 per year thereafter with interest at the legal rate of ten percent. Janel was also awarded a car, the personal property of Cody and Chance, and any gifts or furniture she had received. Furthermore, Dwight was ordered to pay Janel $200 per month in alimony for a period of ten years. Dwight was ordered to pay $500 of Janel's attorney fees and all the costs in the matter. Dwight appealed.

We transferred the appeal to the court of appeals. That court awarded physical care of all the children to Dwight and ordered Janel to pay $290 per month in child support. Janel's property award was reduced because the court of appeals found that the value used by the district court for the farmstead was erroneous. The district court alimony award was not changed. Janel has sought further review of the court of appeals' decision. We vacate the decision of the court of appeals and affirm the judgment of the district court as modified.

## II. *Scope of Review.*

█ Our scope of review in this equitable proceeding is de novo. Iowa R.App.P. 4. *See also In re Marriage of Hunnell,* 398 N.W.2d 877 (Iowa 1987). Because the trial court has a firsthand opportunity to hear the evidence and view the witnesses, we give weight to its findings of fact, but we are not bound by them. Iowa R.App.P. 14(f)(7). In dissolution cases where physical care and custody are at issue, the primary consideration is the best interest of the child. Iowa R.App.P. 14(f)(14). Prior cases have little precedential value, except to provide a framework for analysis, and we must base our decision on the particular facts and circumstances before us. *Cf. In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

## III. *Split Physical Care.*

█ Split physical care refers to the separation of the children of the marriage between the parents. Split physical care occurs when each parent has physical care of at least one child. This is not the same as divided physical care in which physical care is granted to one parent for a period of time and to the other parent for a period of time.

█ There is a difference between custody and physical care. Custody refers to a parent's rights and responsibilities toward the child in matters such as decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction. *See* Iowa Code § 598.41(5) (1989). In Iowa, there is a preference for joint custody. Iowa Code § 598.41.

█ Physical care, on the other hand, refers to the right and responsibility to maintain the principal home of the minor child and provide for the routine care of the child. *See* Iowa Code § 598.1(5). Joint custody does not require joint physical care. Iowa Code § 598.41(5). Only in rare cases is split custody or physical care appropriate. When the court determines that such action would be in the best interest of the child, the court may give custody or physical care of a child to one of the parents.

■ There is a presumption that siblings should not be separated. *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981). We have long recognized that split physical care is generally opposed because it deprives children of the benefit of constant association with one another. "The rule is not ironclad, however, and circumstances may arise which demonstrate that separation may better promote the long-range interests of children." *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981). Good and compelling reasons must exist for a departure.

■ In considering what custody arrangement is in the best interest of the children, the court is required to consider statutory factors. Iowa Code § 598.41(3). All factors bear upon the "first and governing consideration" as to what will be in the best long-term interest of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 426 (Iowa 1984). These statutory factors and the factors identified in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), are appropriately considered when determining the award of physical care.

■ Implicit in any decree granting split physical care is the court's conclusion that both of the parties are capable caretakers as to the specific children placed in their care. A parent need not be a capable caretaker of all the children. The needs of children within the same family may differ. The district court made the following findings as to the suitability of the parents:

Dwight is engaged in custom livestock feeding, trucking and farming. Janel works at a care center.... Dwight's work schedule is very demanding and he is often away from home for long hours trucking. Janel's work schedule is flexible and can be adjusted to fit the children's school attendance. While in Dwight's custody, there have been numerous times when Chance and Cody were left home alone on the farm without supervision.

Janel lives in a small apartment in Atlantic ... and has no means of transportation. She has had to rely on friends for transportation in order to exercise visitation and maintain employment.... Dwight has told the parties' children, friends and family that he believes Janel and [ ] are romantically involved. Janel denies such involvement and the Court declines to conclude that said relationship impairs Janel's ability to parent the children.

During the marriage, Janel was the primary caretaker of the children, ministering to their needs....

By contrast, Dwight has been more preoccupied with his farming and livestock interests....

Dwight has not shared information with Janel regarding the children's school activities or physical well-being. The boys have missed significant days of school in the last year while in Dwight's care.

■ Aside from the caretaking capability of the parties, other factors are considered in determining whether separation is in the best interests of the children. For example, a court should consider the difference in age between the children separated, *e.g., In re Marriage of Kurth*, 438 N.W.2d 852, 854 (Iowa App.1989); whether the children would have been together if split physical care was not ordered, *e.g., id.;* the relationships between the children, *e.g., Jones*, 309 N.W.2d at 461; and the likelihood that one of the parents or children would turn other children against the other parent, *e.g., In re Marriage of Wahl*, 246 N.W.2d 268, 270–71 (Iowa 1976). These and other factors are also discussed in Annotation, *Child Custody: Separating Children by Custody Awards to Different Parents—Post–1975 Cases*, 67 A.L.R.4th 354 (1989).

Again, the court made specific findings supported by evidence in the record as to these considerations:

The two boys, Chance (age seven) and Cody (age nine) are significantly younger than their sixteen-year-old sister, Wendy, and are understandably vulnerable to her influence. Wendy has not shielded her anger or dislike for her mother from her younger brothers and like [Dwight] has discouraged contact, affection and infor-

mation exchange between the boys and their mother.

■ In custody and physical care determinations, we are also mindful that the court must consider the denial of one parent of the child's opportunity to have meaningful contact with the other parent is a significant factor in determining the custody or physical care arrangement. The court found:

At that time, Janel believed that Dwight was attempting to alienate the boys from her and pursuant to the advice of her then attorney [ ] she moved to California with the boys, believing her attorney was securing temporary custody for her. Janel was never notified of the temporary custody hearing and due to her failure to appear, temporary custody was awarded to Dwight.... The children have been in the temporary custody of Dwight ... and Janel immediately returned to this area to spend as much time with the boys as Dwight would allow....

Dwight is not attempting to maximize the boys' contact with both parents....

Dwight discourages the boys' contact with their mother.... The boys are discouraged from showing affection to their mother in front of Dwight or Wendy. Janel has sacrificed some of her limited visitation time with the boys to allow them to participate in special activities with their father.

■ In reviewing its findings of facts, the court correctly applied the proper standards.

Based upon the foregoing, it would be in the best interest of Cody and Chance Will to be placed in the joint custody of the parties and [Janel is] awarded primary physical care of the boys subject to liberal rights of visitation with [Dwight]. The court believes such an award would assure Chance and Cody the opportunity for the maximum continuing physical and emotional contact with both parents....

The court is mindful of the general policy of keeping children of broken homes together when determining the best interests of children in custody disputes. In this case, the Court believes there to be special circumstances which justify the split custody award....

There are good and compelling reasons why the custody of the three minor children in this case shall be split. The long-range best interests of the children will be promoted if Cody and Chance Will reside with their mother who will insure maximum contact between the boys and their father and if Wendy Will is granted her preference of living with her father. [citation].

Iowa Code Section 598.41 (1991) provides in material part: "The Court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." There were numerous occasions when Dwight was working and Janel was not, Dwight denied her the opportunity to spend time with the boys without just cause. [Dwight] would in fact leave the boys home alone rather than let them see their mother. Because Janel was the primary caretaker of the children and has a more flexible work schedule she can better minister to the children's needs. Furthermore, the court does not condone [Dwight's] attempts to alienate the children from their mother. [citations]. The Court concludes that Janel can better put the natural animosities of the dissolution aside and further the long-range best interests of the boys.

We are not unmindful of Janel's ill-advised move to California; we do not view Janel's removal of the children from Iowa lightly. However, in our de novo review, we conclude that Janel should be awarded physical care of Chance and Cody; and that Dwight should be awarded physical care of Wendy. There are good and compelling reasons for the award of split physical care; it is appropriate under the circumstances.

## IV. *Property Valuation.*

At trial, Janel introduced an appraisal report valuing the farmstead. The apprais-

al report showed the farmstead had a value of $96,500. This amount was also contained in Janel's financial statement as her valuation of the farm. Dwight objected to the admission of the appraisal report on hearsay grounds. The court overruled Dwight's objection and received the appraisal report.

On his financial statement, Dwight valued the farm at $50,000. Dwight testified that he believed the value of the farmstead to be between $60,000 and $64,000, based upon his knowledge of a recent nearby farm transaction. No other testimony as to the value of the farmstead was presented. The court valued the farm at $96,500.

■■■ The appraisal report was admitted with no foundation. The appraiser did not testify at trial. The appraisal report was clearly hearsay. Iowa R.Evid. 801(c) (out-of-court statement offered to prove the truth of the matter asserted). The appraisal report does not fit into one of the enumerated hearsay exceptions and is thus inadmissible. Iowa R.Evid. 801(d); 802; 803; 804. *See also In re Marriage of Williams*, 449 N.W.2d 878, 881 (Iowa App. 1989) (upon highly similar facts, court determined that appraisal report was hearsay).

■■■ We do not consider the appraisal report in our review of the property division. In determining the proper value of the farmstead, we review the testimony of Dwight and the values the parties have used in their financial statements.

By using $96,500 as the fair market value, the court overvalued the farmstead by $30,000. We conclude that Janel should receive a lump sum amount of $20,000.

Dwight has already paid $10,000 towards this amount. The balance shall be paid in yearly installments of $2000 plus interest until the judgment is satisfied. The date of payments shall be as ordered by the district court. The judgment shall be a lien against the farmstead. Interest is to be calculated at seven percent per year. All other provisions for division of property and debts by the district court are affirmed.

## V. *Child Support.*

The district court calculated the amount of child support to be paid by each parent and then deviated from the guideline's amounts. Upon our review of the record, we find there is insufficient evidence to overcome the rebuttable presumption that the amount of child support established by the guidelines is the correct amount to be awarded.

■■■ Based upon Dwight's net monthly income of $1993.77 and Janel's net monthly income of $588.46, the guidelines require Dwight to pay Janel $669.91 in child support for the benefit of Chance and Cody. Janel is required to pay Dwight $90.03 for the benefit of Wendy. Setting these amounts off against each other, we find that Dwight is to pay Janel $579.88 per month in child support. We believe a set-off provision is preferred over an exchange payment order. *See, e.g., In re Marriage of Hansen*, 465 N.W.2d 906, 911 (Iowa App. 1990). At such time as Wendy becomes ineligible for child support, Dwight's obligation to Janel shall be increased to $669.91 per month. When only one son is eligible for support, Dwight's obligation will be reduced to $482.49 per month.

## VI. *Alimony.*

■■■ Although our child support guidelines provide that a noncustodial parent's income may be reduced for prior obligations of alimony actually paid, they do not provide for deduction of alimony (spousal support) under the present decree. *In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991). However, in determining if alimony is to be awarded and what amount should be awarded, the court may consider the amount of child support under the decree. *Cf. In re Marriage of Wegner*, 434 N.W.2d 397, 398 (Iowa 1988) (earning capacity of each party to be considered in making an equitable determination of financial obligations of the parties to a dissolution-of-marriage action); *Jones*, 309 N.W.2d at 460 (the alimony issue involves the wife's needs of support and the husband's ability to pay toward that support).

Of course, in making such determinations, the court is guided by the statutory factors listed in Iowa Code section 598.21(3).

We, like the district court and the court of appeals, find Janel should be awarded alimony. Considering the length of the marriage, the obligations for child support, the division of the property and the debts, and all other relevant statutory factors, we modify the district court decree and order Dwight to pay $100 per month to Janel as alimony. Such alimony payments shall cease upon Janel's remarriage or upon the death of either party.

All provisions of the decree of dissolution of marriage are affirmed except as expressly modified in this opinion. Each party shall pay one-half of the cost of appeal. Each party shall pay their own appellate attorney fees.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.