# IN THE COURT OF APPEALS OF IOWA

No. 15-0010
Filed August 19, 2015

**KODY DEAN CALMER,**
      Petitioner-Appellee,

**vs.**

**AIMEE CARYN GOOD,**
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.

A mother appeals the district court's custody order giving physical care to the father. **AFFIRMED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

Daniel J. Tungesvik of Kruse & Dakin, L.L.P., Boone, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

A mother appeals from a district court custody order giving her and the father joint legal custody and the father physical care of their three-year-old child, K.C. The mother contends placing care with the father is not in the child's best interest and she should be awarded care because she was the child's historical primary caregiver. We affirm and award the father attorney fees.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

Kody Calmer and Aimee Good are the parents of a three-year-old daughter, K.C. Kody and Aimee have never been married and, prior to the district court's custody order, had not had a formal custody arrangement. Although the parties were in a relationship at the time of K.C.'s birth, they split up when she was around twenty months old. Aimee petitioned for a custody order. In November 2013, the court entered a temporary order granting the parties joint legal custody and Aimee physical care.

The case came on for full hearing a year later in November 2014. Kody is a full-time student and works part time as an environmental services worker. Aimee works full time as a receptionist in a medical clinic. After hearing the testimony of witnesses for both Kody and Aimee, the court concluded: "There is no question that either parent could be a suitable caretaker for the child. Both have actually cared for the child and have provided stable housing, food and clothing for the child, both before and after the parties' separation. Both are capable of meeting the child's emotional needs." The court also concluded Kody and Aimee generally communicated well together about K.C.'s care. It further

determined that the weight of the evidence supported Aimee's assertion that she had been the child's historic primary caretaker. However, the court clarified, "This is not to say that Kody did not play an important and extensive role in the care of the child but, in comparison, Aimee had greater involvement." During the trial, Aimee disclosed that she planned to move, with K.C. and her paramour, to Scottsbluff, Nebraska, a nine-and-a-half hour drive away from her current home in Boone, Iowa. Largely because of this plan, the court confirmed joint legal custody but granted Kody physical care. The court concluded Kody should be awarded care of K.C. because Kody would do a better job of supporting and promoting K.C.'s relationship with the other parent than Aimee. The court based this decision on fact findings regarding Aimee's conduct during the year she had temporary physical care and her apparent lack of foresight about how moving so far away from Kody and both their extended families would affect K.C. Aimee appeals from the custody order.

## II.     STANDARD OF REVIEW.

Our review of a custody decision is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

## III.    ANALYSIS.

### A.     Physical Care.

In matters of child custody, the first and governing consideration of the court is the best interest of the child. Iowa R. App. P. 6.904(3)(o). Prior cases have little precedential value, except to provide a framework for analysis; we must base our decision on the facts and circumstances before us. *In re Marriage*

*of Will*, 489 N.W.2d 394, 397 (Iowa 1992). The Iowa Code provides a nonexclusive list of factors the court shall consider in determining a custodial arrangement. *See* Iowa Code § 589.41(3) (2013). In determining the award of physical care, it is appropriate for the court to consider the statutory factors, as well as those identified in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). *See Will*, 489 N.W.2d at 398. In relevant part, the statutory factors are:

> a. Whether each parent would be a suitable custodian for the child.
> b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> c. Whether the parents can communicate with each other regarding the child's needs.
> d. Whether both parents have actively cared for the child before and since the separation.
> e. Whether each parent can support the other parent's relationship with the child.
> f. . . . .
> g. Whether one or both the parents agree or are opposed to joint custody.
> h. The geographic proximity of the parents.

Iowa code § 598.41(3). The *Winter* factors are, in relevant part:

> 1. The characteristics of each child, including age, maturity, mental and physical health.
> 2. The emotional, social, moral, material, and educational needs of the child.
> 3. The characteristics of each parent, including age, character, stability, mental and physical health.
> 4. The capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the child.
> 5. The interpersonal relationship between the child and each parent.
> 6. . . . .
> 7. The effect on the child of continuing or disrupting an existing custodial status.

8.    The nature of each proposed environment, including its stability and wholesomeness.

9.    . . . .

11.    Available alternatives

12.    Any other relevant matter the evidence in a particular case may disclose.

223 N.W.2d at 166-67. Further, "[i]n custody and physical care determinations . . . the court must consider the denial of one parent of the child's opportunity to have meaningful contact with the other parent is a significant factor." *Will*, 489 N.W.2d at 399.

"The ultimate objective of a physical care determination is to place the child in the environment most likely to bring him to healthy, mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The question of physical care must be determined based on what is in the best interest of the child, not what is fair to the parents. *Hansen*, 733 N.W.2d at 695. Stability and continuity in caregiving are primary factors in determining an award of physical care. *Id.* at 696. Past caretaking patterns, including primary caregiving, weigh heavily in custody matters. *Id.*; *In re Marriage of Decker*, 666 N.W.2d 175, 178-80 (Iowa Ct. App. 2003). Our standard of review is de novo, but we give weight to the findings of the district court, especially to credibility determinations. *Hansen*, 733 N.W.2d at 690.

Aimee's primary contention on appeal is that giving Kody care of K.C. was not in her best interest because Aimee was the historical primary caregiver. Aimee also asserts the district court erred in favoring the geographic location of Boone over the best parent to care for K.C. and in concluding Aimee was inflexible and unwilling to support K.C.'s relationship with Kody.

Aimee disclosed her plan to move to Scottsbluff, Nebraska, at 2:00 p.m. the day before the trial in November 2014. Although the record is not clear as to when she made the decision to move to Scottsbluff, she testified she planned to move there in July of 2015. She further testified that she had already looked into the necessary prerequisite college classes for the University of Nebraska nursing program and had discovered she could take those prerequisite classes in Scottsbluff. Her paramour will be in Scottsbluff for work for two years, after which they intend to move again, indicating it would be somewhere within the Midwest. She proposed a visitation schedule wherein Kody would see K.C. on three-day weekends in February, March, September, and October; two weeks in the summer; and alternating major holidays. Aimee further testified that if Kody were awarded physical care, she was not sure she would follow through with her plan of moving to Scottsbluff.

The court concluded Kody should be awarded care of K.C. because "Kody will be better at supporting and promoting [K.C.'s] relationship with Aimee than Aimee would be if the roles were reversed." The court cited three reasons for this conclusion: First, while Aimee had physical care of K.C. under the temporary order for a year, she was inflexible with Kody's repeated requests for more time with K.C. or modifications to the schedule. Aimee admitted to denying Kody's requests two dozen times and granted them only rarely. Second, when Aimee went on a vacation for a week, she left K.C. in the care of her family rather than offering Kody her care, despite Kody's repeated requests for more contact. This, the court concluded, was "an indication that Aimee does not fully support Kody in

his role as [K.C.'s] father." Third, Aimee's decision to move to Scottsbluff "was apparently made with limited, if any, consideration as to how it will impact [K.C.'s] relationship with Kody." The court considered Aimee's proposed visitation schedule gave Kody "minimal" visitation time and particularly noted, "Kody's summer visitation cannot be for more than two consecutive weeks, yet [Aimee] apparently expects Kody to go months without seeing [K.C.]" The court further considered that Aimee's parents, siblings, and grandmother live in Boone, which give her additional reasons to travel to Boone, but Kody does not have any other connection to Scottsbluff and would be required to drive nineteen hours roundtrip for each visitation and incur additional travel and lodging expenses to see K.C.

One of the main issues in dispute in this case is who was K.C.'s historical primary caregiver and what weight that determination should be given in deciding which parent is awarded physical care. Under section 598.41(3) and *Winter*, the fact that one parent was the historic primary caregiver is one of a raft of factors by which we evaluate the latter question. The court agreed with appellant that Aimee had been K.C.'s historical primary caregiver. Based on our review of the record, we will uphold that finding. However, it is also clear from the record that over the year since the temporary order has been in place, Kody has provided competent care for K.C. and there are no concerns about his bond with her or his ability to parent her. We also note that, as K.C. is only three years old, the temporary order has been in place for one third of her life; this diminishes the weight we would otherwise give to the historic primary caregiver. What is implied in Aimee's argument is her complaint that Kody did not take much interest in

parenting when they were a couple and did not pay K.C. much attention. This complaint is evident throughout her trial testimony. However, if this were once true, clearly it no longer is, as the court found Kody to be an attentive and capable parent, and we agree.

We further agree with the district court that Aimee's willingness to take K.C. to Scottsbluff and significantly reduce the amount of time she spends with her father is a troublesome sign for her ability to support K.C.'s relationship with Kody. She admitted to rarely honoring Kody's requests for additional time with K.C. under the temporary order, explaining she did not want to break up K.C.'s routine. Yet she is willing to disrupt the existing custodial arrangement and take K.C. nine-and-a-half hours from her father.

We find this to be a close case because both are competent and committed parents. However, after due consideration of the findings of the district court and its credibility determinations, on our de novo review we agree that Aimee's attitude of diminished regard for K.C.'s relationship with Kody tips the scales in favor of placing K.C.'s care with Kody. Accordingly, we affirm the district court's custody and care decree.

### B. Attorney Fees and Costs.

Kody requests appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the

request was obligated to defend the decision of the trial court on appeal." *Id.* We award Kody attorney fees in the amount $1500 and assess costs to Aimee.

## IV.     CONCLUSION.

On our de novo review, we find the best interest of the child is to be placed in Kody's physical care. We therefore affirm the decree of the district court.

**AFFIRMED.**