# IN THE COURT OF APPEALS OF IOWA

No. 16-1592
Filed May 3, 2017

**Upon the Petition of**
**KORY M. FUERSTENBERG,**
        Petitioner-Appellant,

**And Concerning**
**LEAH L. FRETTE,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.


        Kory Fuerstenberg appeals the district court's decree establishing

custody, physical care, visitation, and support for the parties' minor child.

**AFFIRMED AS MODIFIED.**


        Barry S. Kaplan, and C. Aron Vaughn of Kaplan & Frese, L.L.P.,

Marshalltown, for appellant.

        David L. Brown and Tyler R. Smith of Hansen, McClintock & Riley, Des

Moines, for appellee.



        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Kory Fuerstenberg appeals the district court's decree establishing custody, physical care, visitation, and support for the parties' minor child, challenging the district court's award of physical care to Leah Frette. We affirm as modified.

**I.     Background Facts and Proceedings.**

The district court aptly provided the following facts:

> Kory and Leah are the parents of a girl who was born in October of 2015. Kory and Leah met on an online dating site approximately 2.5 years ago. They did not marry and the record shows they did not reside together, although Leah occasionally stayed at Kory's home in Mitchellville.
> Kory is 30 years old. He has an [Associate of Arts] degree in general studies from [Des Moines Area Community College (DMACC)]. He works as a sergeant for the Iowa Department of Corrections (DOC) at the Newton facility. He makes approximately $65,495 per year. His work is approximately 25 miles from his home. He currently works a night shift from 10:00 p.m. to 6:00 a.m., although he can move to a day shift to best meet the needs of his daughter. Kory owns his own home.
> Leah is 23 years old. She took some classes in the DMACC dental program but did not finish. She currently works as a sales associate and teller at Midwest Heritage. She makes approximately $27,560 per year. Leah usually works from 8:45 a.m. to 5:00 p.m., but she has to close one night per week and work every other weekend. Her bank has longer hours because it is housed in a Hy-Vee store. The bank works well with employees to make hours flexible. Leah has worked one prior bank job and has consistently worked since her high school graduation. She lives with her mother in a condo in Urbandale. She intends to move out on her own once she establishes some support from Kory.
> Each party testified that the other is a good parent. It is clear that both love their child and wish to serve her best interests. . . .
> There is no question that Kory has been an involved parent. He attended Leah's pre-birth medical appointments, witnessed the birth of the baby, and stayed at the hospital until check-out. He has provided for all the child's needs when staying at his home and he provides all care when alone with the child. He has seen the child as often as four times per week depending on Leah's work schedule. He estimated he has paid approximately $2,000 for day

care expenses, money to Leah, medical bills, and other supplies that Leah needed for [the child]. The court does not question Kory's commitment to [the child]. As discussed above, Leah does not question his abilities as a parent.

(Footnote and citations omitted.)

On November 6, 2015, Kory filed a petition to establish custody, physical care, visitation, and support of their child. Following a hearing held July 21, 2016, the district court entered its decree, awarding joint legal custody of the child and physical care to Leah. Kory appeals, challenging the district court's refusal to award shared physical care. Additional facts, as relevant, will be discussed below.

## II.  Standard and Scope of Review

We employ the same legal analysis in resolving questions concerning the custody of a child born to unmarried parents as we do in the case of divorcing parents. *See Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). Issues such as custody, visitation, and child support are reviewed de novo. *See Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005); *see also* Iowa R. App. P. 6.907. Although we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007) (citation omitted).

## II.  Analysis

When physical care is at issue, the primary consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o). The court must consider joint

physical care if requested by any party, and if it denies joint physical care, the court must make specific findings of fact and conclusions of law that awarding joint physical care is not in the child's best interests. Iowa Code § 598.41(5)(a) (2015); *In re Marriage of Hansen*, 733 N.W.2d 683, 692 (Iowa 2007). Our law provides a nonexclusive list of factors the court shall consider in determining a custodial arrangement, *see* Iowa Code § 598.41(3),[1] as well as nonstatutory factors, *see In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992) (noting the factors from *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974)).[2]

---

[1] Iowa Code section 598.41(3) provides "the court shall consider the following factors" in making a custody determination:
  a.  Whether each parent would be a suitable custodian for the child.
  b.  Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
  c.  Whether the parents can communicate with each other regarding the child's needs.
  d.  Whether both parents have actively cared for the child before and since the separation.
  e.  Whether each parent can support the other parent's relationship with the child.
  f.  Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
  g.  Whether one or both the parents agree or are opposed to joint custody.
  h.  The geographic proximity of the parents.
  i.  Whether the safety of the child, other children, or other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.
  j.  Whether a history of domestic violence, as defined in section 236.2, exists. . . .
  k.  Whether a parent has allowed a person custody or control of, or unsupervised access to a child after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A.

[2] Additional factors the court should consider include:
  (1) The characteristics of each child, including age, maturity, mental and physical health.
  (2) The emotional, social, moral, material, and educational needs of the child.

Factors to be considered in determining whether joint physical care is in the child's best interests include (1) continuity, stability, and approximation; (2)"the ability of [the parties] to communicate and show mutual respect"; (3) "the degree of conflict between parents"; and (4) "the degree to which the parents are in general agreement about their approach to daily matters." *Hansen*, 733 N.W.2d at 696-99. Not all factors are given equal consideration, and the weight of each factor depends on the specific facts and circumstances of each case. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998).

First, we note the district court made no credibility findings against either party. Occasionally, we are able to discern some credibility determinations from the findings of fact. That is not the case here.

Considering first the concepts of continuity, stability, and approximation, we note both parents have been heavily involved in the life of this child. The district court found Leah had been the primary caregiver. However, the record

---

(3) The characteristics of each parent, including age, character, stability, mental and physical health.
(4) The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
(5) The interpersonal relationship between the child and each parent.
(6) The interpersonal relationship between the child and its siblings.
(7) The effect on the child of continuing or disrupting an existing custodial status.
(8) The nature of each proposed environment, including its stability or wholesomeness.
(9) The preference of the child, if the child is of sufficient age and maturity.
(10) The report and recommendation of the attorney for the child or other independent investigator.
(11) Available alternatives.
(12) Any other relevant matter the evidence in a particular case may disclose.

*Winter*, 223 N.W.2d at 166–67.

reflects both parties maximized the time they could spend with the child. As found by the district court, the record reflects Kory would spend up to four days a week with the child. While the child spent every night with Leah, this was despite Kory's request that he be able to keep the child overnight. When Leah denied this request, Kory abided by her wishes. Kory, like Leah, has attended and even scheduled the child's medical appointments. Based on the extensive time the child has spent under the care of both parents, we find continuity, stability, and approximation weigh in favor of a shared-care arrangement. *See Hansen*, 733 N.W.2d at 696-98 ("All other things being equal, however, we believe that joint physical care is most likely to be in the best interest of the child where both parents have historically contributed to physical care in *roughly* the same proportion." (emphasis added)); *see also* Iowa Code § 598.41(3)(b), (d).

We next consider the ability of the parties to communicate and show mutual respect. With regard to this factor, the district court found:

> The parties have had multiple episodes of fighting and name-calling. To their credit, they did not submit exhibits showing text messages and emails that seem to be customary in today's social-media-era of custody cases. However, each party provided testimony of name-calling and bad treatment that goes both ways. There have been other incidents of verbal threats of calling the police and at least one incident wh[ere] Leah called the police after Kory did not return [their child] to her care at the time she expected. Kory admitted to having a temper that was explosive at times. Leah denied having a temper like Kory's, although she was recently convicted of interference with official acts after being arrested for an OWI. Kory has conflicts with Leah's mother.

The record clearly supports a history of communication issues between the parties. *See Hansen*, 733 N.W.2d at 698; *see also* Iowa Code § 598.41(3). However, we note the conflict became heightened in June 2016, after Leah

began limiting Kory's access to their child. Kory testified Leah informed him this change happened because his access to the child would be less under a court-imposed, formal visitation arrangement. Leah indicated the change was made based on Kory's controlling behavior and verbal abuse. Regardless, it is clear from the record this change escalated the parties' issues. Both parties indicated their conflicts would be eased when a formal custody arrangement was set in place by the court. We are persuaded a significant portion of the parties' communication issues regarding their child arose from a lack of clarity about and structure regarding who had the right of custody over the child. We also note the record supports the parties have long been able to communicate about the child, with Leah informing Kory about her schedule and when and where he could pick up the child to maximize his time with her. Thus, while we agree with the district court this factor weighs against a shared-care arrangement, the record supports some of this concern will be alleviated by a structured arrangement for the parties.[3]

Similarly, we consider the degree of conflict between the parties. First, we note there was no finding of any physical abuse between the parties. We also note the parties had an extended period of time where they were able to work out arrangements for their child. And again, we emphasize the record reflects there was a marked increase in conflict between the parties just before this case was tried before the district court. At the same time, the record supports a history of name-calling and an incident where police were involved to resolve a custody

---

[3] We also note, as found by the district court, that both parties have contributed to the communication issues.

conflict between the parties. While this factor weighs against a shared-care arrangement, we must also consider the other factors and, ultimately, what is in the child's best interests.

As noted by the district court, the record reflects the parties have worked together on making decisions for the child, including picking her doctor, selecting formula, and deciding on a daycare. Kory has also willingly provided insurance for Leah and the child and covered the medical expenses related to the child's birth. In fact, beyond conflicts regarding the custody exchanges of the child, the record does not reflect any other disputes regarding care for the child herself.[4] We therefore find this factor also supports a shared-care arrangement. *See Hansen*, 773 N.W.2d at 699; *see also* Iowa Code § 598.41(3)(c).

Turning to the additional factors, the district court properly found the parties are both willing and able to be suitable custodians and provide for the needs of the child. *See* Iowa Code § 598.41(3)(a); *Winter*, 223 N.W.2d at 166. Both parents have a healthy and beneficial relationship with the child and can provide a stable and wholesome living environment. *See Winter*, 223 N.W.2d at 166. And both parties acknowledge the other is a good parent and supports the other's relationship with the child. *See* Iowa Code § 598.41(3)(e).

While we are aware Leah opposes the shared-care arrangement, *see generally* Iowa Code § 598.41(3)(g), our ultimate concern is the best interest of the child. *See Hansen*, 733 N.W.2d at 695 ("Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what

---

[4] The only issue raised by Leah was her alleged concerns regarding Kory's possession of guns, which Kory necessarily has as part of his employment as a correctional officer.

is best for the *child*.").  As noted by the district court, though the parties have had communication problems in the past, they both "professed that they would try to work together and set aside past disagreements and arguments."  The district court made no specific findings the award of joint physical care is not in the best interest of the child.  Ultimately, on our review of the record and all the required factors, we find the parties' communication conflicts are not substantial enough to conclude "that the awarding of joint physical care is not in the best interest of the child."  Iowa Code § 598.41(5)(a).  Accordingly, we modify the decree insofar as it awarded physical care to Leah and award shared care of the minor child to the parties.  Further, based on this modification, we strike the portion of the decree providing as follows:  "Respondent shall have primary discretion regarding education for the minor child[] with preference of the location for schooling to be in the school district where the respondent resides."  This modification necessarily also applies to summer and holiday visitation and child support, as directed below.

We have a limited record to guide us in determining the specifics of the shared care schedule and its impact on the ordered visitation provisions.  The focus of Kory's testimony was on requesting any physical care arrangement that would approximate a fifty-fifty division of time.  Leah's testimony focused on being the physical care provider, and she only briefly testified that if the court were to award fifty-fifty shared care she would favor a three-day four-day split.  The record is devoid of any proposals by either party with respect to the kind of issues identified in Iowa Code section 598.41(5)(a) (second and third sentences).  We determine the best course of action is to remand this case to the district court

with directions to require the parents to submit, either individually or jointly, a proposed joint physical parenting plan as contemplated by section 598.41(5), and after consideration of the proposed plan(s), order appropriate decretal provisions to include shared care, summer and holiday care, and child support. We affirm the remaining provisions of the district court's decree.

**AFFIRMED AS MODIFIED.**