# IN THE COURT OF APPEALS OF IOWA

No. 20-0564
Filed February 17, 2021

**IN RE THE MARRIAGE OF JACOB L. GRILLO
AND KESHIA N. GRILLO**

**Upon the Petition of
JACOB L. GRILLO,**
     Petitioner-Appellant,

**And Concerning
KESHIA N. GRILLO,**
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Floyd County, Rustin T. Davenport, Judge.

Jacob L. Grillo appeals the district court's order splitting physical care of the parties' children. **AFFIRMED.**

William P. Baresel of Prichard Law Office, PC, Charles City, for appellant.

Danielle M. Ellingson of Eggert, Erb, & Ellingson, P.L.C., Charles City, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**VAITHESWARAN, Judge.**

Jacob L. and Keshia Grillo married in 1997 and divorced in 2020. The couple has eight children, five of whom were minors at the time of trial. The district court granted Jacob temporary physical care of all five children but, following trial, ordered a split arrangement, with Jacob receiving physical care of the older two children and Keshia physical care of the youngest three. On appeal, Jacob contends the court should have granted him physical care of all five children.

"Split physical care occurs when each parent has physical care of at least one child." *In re Marriage of Will*, 489 N.W. 2d 394, 397 (Iowa 1992). "[S]plit physical care is generally opposed because it deprives children of the benefit of constant association with one another." *Id.* at 398. However, "[t]he rule is not ironclad" and in some cases "separation may better promote the long-range interests of children." *Id.* (citing *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981)). In determining whether separation is in the best interests of the children, courts are to consider: the caretaking ability of the parents, the age difference between the children, whether the children would have been together if split physical care was not ordered, the relationships between the children, and the likelihood that one of the parents or children would turn the other children against a parent. *See id.*

Following a fraught trial that included testimony from four of the older children, the district court determined, "This case is an extreme exceptional circumstance where split physical care is necessary." Our review of the court's findings is de novo but, in assessing the court's determination, we consider "[t]he trial court['s] . . . added advantage of being able to personally watch and listen to

the parties and the other witnesses." *Jones*, 309 N.W.2d at 462. In light of the court's unique perspective, we give weight to its findings. *Will*, 489 N.W.2d at 397.

The court found, "It is not disputed that prior to 2018 Keshia was the parent who provided the primary care to all of the children." The record supports the finding. Approximately seventeen years before the dissolution trial, Jacob sustained an employment-related closed-head injury that rendered him disabled. He testified he began experiencing migraine headaches, "couldn't stand the sunlight", and "pretty much—had to be in a dark room almost the whole time." Jacob settled into the basement of the family home. Keshia testified "he pretty much stayed in the dark in the back, and we very seldom ever saw him." Jacob agreed he "should have been more involved" with the children.

The district court acknowledged that, in 2012, the department of human services issued a founded child abuse report against Keshia for striking one of the children with a stick. But the court found the family was offered and received services, the case was closed in 2013, and "following the 2012 founded abuse report, there is no evidence that Keshia has otherwise abused the children." These findings are supported by a department social worker's testimony as well as the testimony of an in-home services provider who worked with the family for about eighteen months beginning in June 2016. The provider characterized Keshia as the main caregiver, testified the children in the home never seemed scared around her, and said she did not see any signs of physical abuse of the children by the parents. Another service provider who worked with the family to provide "early intervention and preschool services and typically met with Keshia and the children twice a month, similarly stated she "never saw any interactions that concerned

[her] or anything within the home that concerned" her. She testified the children in the home appeared connected and comfortable with Keshia. In her view, Keshia seemed loving and caring and she had no concerns about her parenting. Notably, Jacob conceded he had not observed any physical spanking of the children since the department's involvement in 2012.

The district court also acknowledged Jacob had been caring for all five children since 2018, pursuant to the temporary custody order. But the court found he had "to rely upon the older children to assist him in parenting." Jacob conceded as much. He testified two of the older children mowed the lawn and another child helped with dishes and laundry. The district court did not find that Jacob's need for assistance with household chores prevented him from exercising physical care of all five children. The court instead focused on Jacob's decision to enlist the older children's help in alienating the younger ones from their mother. *See id.* at 399 (stating the court must also "consider the denial of one parent of the child's opportunity to have meaningful contact with the other parent"). The court made the following pertinent findings:

> [Jacob] has demonstrated his willingness to involve the older children to place influence on the younger children and to involve the children in adult matters. It appears he has actively tried to influence and adversely affect Keshia's relationship with the children. This relationship grows worse the more time the children spend in Jake's care. His efforts have carried over to the older children, who also negatively impact on Keshia's relationship with the younger children. Jake has been rigid regarding Keshia's time with the children and has not been supportive. A split physical care arrangement is appropriate where keeping the minor children together with Jake would actually be detrimental to the younger children in that they will be influenced to be hostile towards Keshia. Keshia has not demonstrated the same negative attitude towards Jake and has appeared to have acted appropriately with the children and not involve the children in adult matters.

The record supports these findings. Jacob admitted it was his choice to have some of the children testify at trial. He also admitted he had the oldest two children call Keshia about scheduling visits. While he laid the blame for the absence of direct communication at Keshia's doorstep, he acknowledged his inability to co-parent and he minimized Keshia's role in the children's lives.

Jacob's comments about Keshia's visits with the children are telling. He sought professional supervision of the visits despite scant evidence of harm to the children during those visits and he stated, "In a perfect world I wouldn't want them involved in it at all." He also made key decisions unilaterally, such as returning the youngest children to public schools following a joint decision to homeschool them.

We recognize Keshia took similar actions that were inimical to the children's best interests, such as videotaping them during visits. But she stated she did so "as much as possible out of protection for [herself] and the kids because of all the accusations tha[t] [were] been brought against [her] that are not true." Her rationale is partially borne out by the trial testimony of one of the older children who attended visits with the younger ones and leveled charges against Keshia that the district court found incredible. And it is borne out by the children's statements during their most recent visit that their father was going to win the custody case and Keshia would never see them again. In Keshia's words, Jacob did "[e]verything to distance" her from the children and "sabotage the good relationship" she had with them. We agree with the district court that parental alienation was the dispositive factor.

The testimony of the seventeen and fifteen-year-old minor children underscores that assessment. No useful purpose would be served by recounting

their testimony. *See Jones*, 309 N.W.2d at 462 ("An extended statement of the circumstances would be helpful to no one, and very possibly harmful to the [children]."). Suffice it to say that the district court appropriately honored their preference to live with Jacob after finding that to do otherwise would prove "impractical" and "detrimental to [their] welfare." *See In re Marriage of Townsend*, No. 12-0502, 2012 WL 5954590, at *7 (Iowa Ct. App. Nov. 29, 2012) (concluding given child's age "difficulties could arise if we were to order him to live with his mother, contrary to his expressed wishes"); *see also In re Marriage of Kalkwarf*, No. 02-1309, 2003 WL 21230413, at *2 (Iowa Ct. App. May 29, 2003) ("When a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling, may be considered by the court.").

The thirteen-year-old child also showed signs of alienation from Keshia. His counselor noted that, like his older siblings, he expressed a preference to live with his father. Although the child's age might auger in favor of honoring the preference, the counselor's further testimony that the child was informed of the custody proceeding, expressed a belief "that Dad will be awarded full custody," and "generally talk[ed] about his siblings when he talk[ed] about things like this" gives us pause. Also troubling are the counselor's concerns about the child that were "independent of either parent." At the end of the day, we are persuaded that Keshia was better equipped to address those independent concerns. For these reasons, we agree with the district court's decision to grant Keshia physical care of the third minor child.

We are left with the two youngest children, ages ten and seven. According to the principal at the school they attended, both missed significant numbers of school days while in their father's care. Ultimately, the school reached an agreement with Jacob to allow the ten-year-old child to go to school for half days. Jacob did not tell Keshia about this development. That fact, together with the youngest child's concededly close relationship with Keshia lead us to agree with the district court's decision to grant Keshia physical care of these children.

In approving a split physical care arrangement, we acknowledge that the older children played a significant role in the younger children's lives notwithstanding the age differences. But we believe the negative consequences flowing from those sibling relationships justified separation. As the district court stated, it was "not in the best interests" of the youngest three children to be placed with Jacob, because "through [his] influence and the older children's influence," they would "become hostile and estranged from Keshia." We affirm the district court's split physical care decision.

On a related note, Jacob argues "upon reversal of the court's [physical care] order, [he] would like the return of the marital home."[1] Having declined to reverse the split physical care decision, we need not address this issue further.

**AFFIRMED.**

---

[1] The court stated: "[B]ecause Keshia will have the younger children, she should be placed in the marital home."