# IN THE COURT OF APPEALS OF IOWA

No. 25-0588
Filed February 11, 2026

**Abbey Jaquith,**
Plaintiff–Appellee,
v.
**Bradley Jaquith,**
Defendant–Appellant.

Appeal from the Iowa District Court for Black Hawk County,
The Honorable David F. Staudt, Judge.

**AFFIRMED**

Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,
PLC, Cedar Falls, attorney for appellant.

Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, attorney for
appellee.

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

Bradley Jaquith appeals from the district court's final domestic abuse protective order. The district court found Bradley committed domestic abuse against his wife, Abbey Jaquith. Bradley argues insufficient evidence supports such a finding. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Bradley and Abbey are married with two children. Abbey filed for divorce in December 2024. On February 15, 2025, Abbey petitioned for relief from domestic abuse. In that petition, Abbey alleged that Bradley had committed both recent and past domestic abuse.

Abbey alleged that, during the most recent incident, Bradley had shut off the hot water while she was in the shower.[1] When she asked him to turn it back on, Bradley set up his phone to record her, so Abbey grabbed it. He then "shoved [her] down and [she] went to run up the stairs and he grabbed [her] by [her] arm to yank [her] down the steps repeatedly. He was screaming at [her] and calling [her] names." Both children witnessed the incident.

Abbey continued to allege that previously that month, Bradley yelled at her "in [her] face" in front of the children and "spit in [her] face" when she instructed him to stop. About a week later, Bradley shoved her in the laundry room while she was getting the children ready for school.

Abbey requested that the district court order Bradley to stop the domestic abuse, stay away from her, stay away from the family home, stay away from her workplace, not be in her presence or attempt to contact her,

---

[1] Abbey alleged this act has occurred before because Bradley said she "wasn't worthy of taking a hot shower."

provide her financial support, and not have firearms or ammunition. She also requested Bradley give her possession of the family home, car, and pet, as well as custody of the children. Lastly, Abbey requested Bradley and his family stop "talking poorly" about her, name calling, and "tearing [her] down."

The district court entered a temporary protective order pending a hearing. The hearing was held on February 28. Abbey testified that, during the February shower incident, Bradley chased her up the stairs while she was wearing a towel, and "grab[bed her] by [her] arm to pull [her] down the steps" and she "continued to run up the steps and [he] continu[ed] to try to grab [her] and pull her down the steps" in front of the children. She then went to put on clothes, called her mother, left with the children, and reported the incident to the police. She recounted the other two previous incidents and claimed to not call the police after either of those incidents because she was "tired of calling them" and they already had "been to [the] house a couple times." Abbey confirmed that each incident made her feel threatened and was painful and offensive.

Abbey also testified that Bradley had called the police in January because she removed some outdoor home surveillance cameras. Bradley became very angry about the camera removal, ran at her, and "put his arm back like he was going to punch [her]" while she was holding their four-year-old child in her arms. Abbey was frightened and believed the incident ended because she was holding the child.

Abbey additionally testified that she contacted the police a few weeks prior to the camera incident after Bradley had "been screaming and yelling at [her] in [her] face . . . before school one morning and was threatening [her]." She became frightened because he had shoved her multiple times in the past.

Bradley denied each incident of physical aggression and argued that the incidents were "born out of [Abbey's] unhappiness of having to share a residence with Brad during the parties' dissolution of marriage." He admitted that the attempted arrangement whereby Abbey lived upstairs and he lived downstairs had not been working out and that the parties often argued in front of children.

Following the hearing, the district court entered the final protective order. Bradley now appeals.

## STANDARD OF REVIEW

Since civil domestic-abuse cases are tried in equity, our review is de novo. *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). Although we are not bound by the district court's fact findings and credibility determinations, we give deference to those findings and determinations due to the court's "firsthand opportunity to hear the evidence and view the witnesses." *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

## MERITS

A party seeking protection from domestic abuse under Iowa Code chapter 236 (2025) must prove their allegations by a preponderance of the evidence, meaning the allegations are more likely true than not. Iowa Code § 236.4(1). Bradley denies he committed the acts of physical assault of which Abbey accuses him. The evidence available to the district court was limited to each party's testimony. Bradley attacks Abbey's credibility, contending "Abbey was inventing allegations to get a leg up in the parties' dissolution case" and that responding officers never observed physical injuries on Abbey. But the district court directly heard both parties' testimony and was free to discredit Bradley's self-serving testimony in favor of Abbey's testimony.

And observation of lasting physical injuries is not necessary for a finding of assault. Assault can be triggered from as little as the act being "insulting or offensive to another," *see* Iowa Code §§ 708.1(2)(a), 236.2(2), which grabbing, shoving, or spitting on Abbey could be categorized as, regardless of whether those acts left lasting physical damage.

We have conducted a careful de novo review and conclude that disposition is dependent on a determination of the parties' credibility as witnesses. The district court's final order found that Bradley committed domestic abuse against Abbey, implicitly resolving any credibility disputes between Abbey and Bradley's testimony. We thus give deference to that finding and affirm the district court's final protective order. We also award Abbey her requested $4,800 in attorney fees and tax the costs of this action to Bradley.[2]

**AFFIRMED.**

---

[2] Appellate attorney fees are within our discretion to award upon weighing the requesting party's needs, the other party's ability to pay, and the appeal's merits. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We carefully reviewed Abbey's attorney-fee affidavit and exhibit, considered the parties' respective incomes, and find Abbey's request to be reasonable in light of her success on appeal.