In re the **MARRIAGE OF James B. RALSTON and Juanita I. Ralston.**

Upon the Petition of **James B. RALSTON, Petitioner,**

and concerning

**Juanita I. RALSTON, Respondent.**

No. 2–57425.

Supreme Court of Iowa.

May 19, 1976.

| | | |
|---|---|---|
| Lake cottage | $16,000 | (less $1873.02 mortgage) |
| Homestead | 15,000 | |
| Household goods and furniture | 2,000 | |
| 1969 Dodge | 1,500 | |
| 1973 Buick | 4,000 | |
| Mortgage certificate | 4,086 | |
| Certificate of deposit | 3,500 | |
| United States bonds | 5,000 | |
| Life insurance | 2,000 | |
| Tools | 750 | |

In addition, James testified he had a $10,-000 railroad annuity policy payable at age 65.

In 1972 his wages were $21,195; in 1973 they were $31,928.08. He was guaranteed minimum wages of $1,700 monthly. He expected to work until he reached 65. Upon retirement at age 65 he would receive a Railroad Retirement Act pension benefit of $469 monthly. In addition, he would receive a company pension of $70 monthly. If Juanita were married to James when he retired she would also receive a Railroad Retirement Act pension benefit. See 45 U.S.C. § 231a(c). When she reached age 65 her benefit would be $225.70 monthly. The dissolution of marriage extinguished her eligibility for this benefit. 45 U.S.C. § 231d(c)(3). It also ended coverage of her under James' health insurance.

At the time of trial James was in good health; Juanita was not. She had diabetes, heart trouble, liver problems, a back injury, and hypertension. Although she had previously worked in a nursing home, she had not worked for about three years, possessed no skills, and was at the time of trial unable to work outside the home. She spent $50 a month for medicine and estimated her total monthly needs at $600. Based on the commissioner's standard ordinary mortality table, she had a life expectancy of 19.71 years; James had a life expectancy of 16.12 years.

Under the dissolution decree the trial court awarded James the lake cottage, subject to its encumbrance, 1973 Buick, life insurance policy, tools, and one-half the value of the mortgage certificate and United States bonds. Juanita was awarded the home, household goods and furniture, 1969 Dodge, certificate of deposit, the other half

B. V. Willie, Eagle Grove, and Herrick, Langdon, Belin & Harris, Des Moines, for appellant.

Robert D. Blue, Eagle Grove, for appellee.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves the economic provisions of a dissolution decree. Petitioner James B. Ralston challenges the property division and lump sum alimony award in the decree dissolving his 39-year marriage to respondent Juanita I. Ralston. We modify and affirm.

The parties were married in 1935. At the time of trial James was 60 and Juanita was 55. The two children of the marriage were adults and had left home. The parties resided in Eagle Grove.

James left the home in May 1973. He started this dissolution action shortly thereafter. Juanita cross-petitioned for separate maintenance. She has not appealed from the provision of the decree dissolving the marriage.

James had been employed by the Chicago Northwestern Railway Company for 33 years. Primarily through his earnings the parties had accumulated holdings of an estimated value of nearly $52,000. Their assets were as follows:

of the mortgage certificate and bonds and the annuity policy. Exclusive of the $10,000 annuity policy, the value as of the time of trial and terms of which are not shown in the record, the parties each received about one half in value of their accumulated assets. James had testified he thought Juanita should receive about one-half the assets, saying, "She's entitled to her half, and I'm entitled to mine".

The court also awarded Juanita $42,000 as lump sum alimony, payable $500 monthly starting July 1, 1974, for five years until $30,000 was paid, then reducing to $250 monthly until the remaining $12,000 was paid.

James complains the property division and alimony award were based in part on considerations of fault. The complaint regarding trial court consideration of fault evidence rests on the fact Juanita's lawyer questioned James about his interest in another woman. The inquiry arose during cross-examination of James about his unwillingness to attempt reconciliation. Juanita's attorney asked, "The fact of the matter is you have another interest?", and defense counsel objected to the line of questioning as "incompetent, irrelevant and immaterial". The court did not rule on the objection. James answered the question, "Yes". Evidence was then received that James was living with and supporting another woman in Des Moines. Later, evidently from a desire to fight fire with fire, James' attorney brought out the fact Juanita had twice been invited out by a male friend during the separation period. She testified she turned down the invitations.

■ We have held trial judges should ordinarily reserve ruling on objections in equity cases. Answers are received subject to objection. This procedure facilitates *de novo* review of the record in this court. *Leo v. Leo*, 213 N.W.2d 495, 497–498 (Iowa 1973). No basis appears for finding the trial court considered evidence of fault in making the property division and alimony award in this case. We have no occasion to decide whether the challenged evidence was relevant on the issue raised by Juanita's denial of James' allegation of marital breakdown in resisting the dissolution.

■ James' more serious complaint is that the property and alimony awards are excessive. We have carefully reviewed the record in light of the criteria listed in *Schantz v. Schantz*, 163 N.W.2d 398 (Iowa 1968), without regard to the fault concept, *In re Marriage of Williams*, 199 N.W.2d 339 (Iowa 1972). Having done so, we conclude the awards are equitable.

The parties came into the marriage as equals. We are unable and unwilling to say that James contributed more to it than Juanita simply because he brought the bulk of the income into the home while she worked in the home and devoted her attention to homemaking and child-rearing. The marriage lasted 39 years. Each party devoted his best years to it. Unfortunately, Juanita not only lacks a marketable skill but has serious health problems. James appears to be in good health and holds an excellent job. He also is assured an excellent pension. Juanita lost her pension rights when the dissolution was granted.

Considering all the relevant factors, including Juanita's health, inability to hold gainful employment, needs, loss of potential pension benefits, the length of the marriage, and her contributions to it on the one side, and James' health, ability to hold employment, earnings, needs, pension rights and marital contributions on the other, we find the property and alimony awards are equitable.

Although the record does not disclose the trial court's reason for ordering lump sum alimony, it is reasonable to believe the court was motivated by a desire to assure Juanita's security. We find no merit in James' contention alimony should not have been awarded in a lump sum.

■ We do find merit, however, in James' contention that the decree should be modified to make the installments of alimony payable over a period greater than ten years. He believes this would enable him to deduct the installment payments for income tax purposes. Under 26 U.S.C.

§ 71(c), installment payments discharging a lump sum alimony obligation may be treated as deductible periodic payments for income tax purposes if payable over a period ending more than ten years from the date of the decree. We believe the decree should be modified to permit the installment payments here to be treated for income tax purposes as deductible periodic payments. To that end, we modify the decree to provide that the $42,000 lump sum alimony award shall be payable at the rate of $500 monthly from and after July 1, 1974, until $12,000 is paid, then reducing to $400 monthly until an additional $14,000 is paid, then reducing to $225 monthly until the remaining $16,000 is paid.

Juanita has filed an application for an award of attorney fees and expenses in connection with this appeal. We deny the application because we believe she should pay her own attorney fees and expenses for the appeal.

Except as modified, the decree is affirmed.

Costs to petitioner.

MODIFIED AND AFFIRMED.