In re the MARRIAGE OF Geraldine L. JONES and Charles C. Jones.

Upon the Petition of Geraldine L. Jones, Appellee,

and

Concerning Charles C. Jones, Appellant.

No. 65453.

Supreme Court of Iowa.

Aug. 26, 1981.

Morton A. Teitle, Davenport, for appellant.

Harold J. DeLange II, Davenport, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

This appeal involves several terms of a marriage dissolution decree.

Charles C. and Geraldine L. Jones were married on August 27, 1962. Charles was twenty-two and Geraldine nineteen. Charles had been in the United States Navy approximately four years at the time, and subsequently remained in the service until he was eligible for military retired pay in 1976. Thereafter he was employed as a security guard by International Harvester Company. After two temporary layoffs, he was laid off again in 1979. He has since had part-time work as a trailer loader for Roadway Express, and other jobs, limited by a hernia condition requiring surgery. At time of trial he was receiving military retired pay and unemployment benefits.

Geraldine did not work outside of the home during the first twelve years of the seventeen-year marriage. This was largely due to Charles' extensive service overseas, during which the family accompanied him to various points. Geraldine has subsequently become a bookkeeper with a business firm.

The parties have three children, William, age 12 at the time of decree, Charles, Jr., 16, and Jacquelyn, 19, a child of Geraldine's first marriage. Charles adopted Jacquelyn during this marriage.

The trial court dissolved the marriage and granted custody of William to Geraldine and custody of Charles, Jr. to Charles. Liberal visitation rights were granted each party. Charles appeals from this split custody arrangement, and Geraldine cross appeals for custody of both boys should this court disapprove the split custody.

The court also divided the parties' assets. The parties appear content with the division except as to Charles' military retired pay. Charles appeals as to that item.

The court did not award alimony to either party, but granted Geraldine $30 weekly as child support for William and directed Charles to continue to help Jacquelyn with college expenses. Geraldine cross appeals from these terms, asking for increased child support, for specification of the amount Charles is to provide Jacquelyn for college, and for attorney fees in connection with this appeal.

I. *Military retired pay.* The trial court analyzed the retired pay question as follows in its conclusions of law:

In this case the parties were married for approximately 14 of the 18 [19?] years that Respondent spent in the Navy. She participated in the hardships of being a Navy wife in that as Respondent was transferred from one post to another she moved with him and established and maintained a home under many adverse conditions, raised a family and did some work outside the home. It was always contemplated that upon his retirement she would participate in the benefits of his Navy pension. Upon the granting of the dissolution decree she no longer will be able to enjoy benefits under his Navy pension and provision must be made to compensate her for loss of such benefits. The Court is powerless to split the pension into two parts so that the United States government would pay her a proper portion thereof; and this matter should be provided for by granting the Petitioner ownership of a portion of such pension and ordering Respondent to pay to her her portion thereof as he receives the pension payments.

As part of the property division, the court included paragraph f in its decree, granting Geraldine about 37% of Charles' future military retired pay, as follows:

f. 7/19ths of Respondent's Navy pension (being ½ of 14/19ths thereof, said 14/19ths arrived at by the 14 years of marriage during the 19 years he built up his pension), or currently $205.00 per month. As the pension is increased her interest shall be increased by the same percentage as the whole pension is increased. He shall pay said $205.00 and the increased amount from time to time to the Clerk of this Court monthly as the

monthly pension checks are received by him, and within three days after each check is so received by him, to be paid by said Clerk to Petitioner. Judgment hereby is entered in favor of Petitioner and against Respondent for each of said payments as it becomes due.

On apportioning pensions between non-marital and marital periods, see *In re Marriage of Wilson*, 10 Cal.3d 851, 854, 519 P.2d 165, 167, 112 Cal.Rptr. 405, 407 (1974).

With respect to this term of the decree, Charles asserts the retired pay is income and not property which is subject to division; the division violates the Supremacy Clause of the United States Constitution, federal statutes, and case law; the division is contrary to decisions of this court; and if a division is otherwise permissible, the trial court should have taken the income tax consequences into consideration.

The courts have made various dispositions of pensions in dissolution cases. *See* Annot., 94 A.L.R.3d 176 (1979). Our course is already charted by our decisions.

The starting point is *Schantz v. Schantz*, 163 N.W.2d 398 (Iowa 1968). We there outlined the principal factors to be considered in resolving the finances of spouses in dissolution cases. The final one relates to "any other relevant factors" which bear upon an equitable solution of the financial issues. *Id.* at 405. *See also* 1980 Sess., 68 G.A., ch. 1175, § 3 (amending § 598.21, The Code); *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972).

Subsequently a case came before us involving both private and public pensions, *In re Marriage of Ralston*, 242 N.W.2d 269 (Iowa 1976). There the trial court took the pensions into consideration by granting the other spouse a sum of alimony payable over a number of years. We approved the decree but extended the time period for the payments in order to allow for income tax consequences. *Id.* at 271–72. *See also* § 598.21, The Code 1979; *Seiler v. Seiler*, 48 Wis.2d 400, 404–07, 180 N.W.2d 627, 629–31 (1970); Annot., 51 A.L.R.3d 461 (1973).

Later we dealt with social security benefits as a form of pensions, and held that a spouse's loss of social security resulting from dissolution could be considered by the dissolution court in framing the financial clauses of its decree. *Locke v. Locke*, 263 N.W.2d 694, 696 (Iowa 1978).

We then decided *In re Marriage of Schissel*, 292 N.W.2d 421 (Iowa 1980). That case like this one involved military retired pay of a husband, but the time for payment of the retired pay had not yet arrived. Without attempting to divide the retired pay itself, the trial court in that case, in its property division, took the future retired pay *into consideration* and added an estimated sum, $8000, to the wife's side in adjusting the parties' equities. We deemed this also to be an appropriate way to handle pension benefits, *id.* at 427; *see* Annot., 22 A.L.R.2d 1421 (1952), and we found no interference with federal law which would run afoul *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). *See also In re Marriage of Musser*, 70 Ill.App.3d 706, 710, 27 Ill.Dec. 240, 388 N.E.2d 1289, 1292 (1979). More recently the United States Supreme Court, following *Hisquierdo*, decided *McCarty v. McCarty*, —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (state court cannot divide military retired pay as community property).

■ With these decisions charting our course, we hold that the trial court could not split the military retired pay itself, but properly took it into consideration in requiring Charles to pay Geraldine monthly sums of money. The alimony issue involves the wife's need by way of support and the husband's ability to pay toward that support. *Freel v. Freel*, 253 Iowa 327, 330, 112 N.W.2d 371, 373 (1961). Geraldine's need is evident. Charles' ability to pay is also evident; *factually*, his income from retired pay cannot be realistically ignored, and it is subject to levy for support. 42 U.S.C. §§ 659, 662(c) (Supp. III 1978). *See Howard v. Howard*, 196 Neb. 351, 358, 242 N.W.2d 884, 888 (1976).

■ An allowance of periodic alimony which takes Charles' income from military retired pay *into account* does not impinge

on *McCarty*. The payments that the trial court required of Charles appear reasonable in amount, but for the tax reasons stated in *Ralston*, and see 26 U.S.C. §§ 61(a)(8), 71, 215 (1976), and to take into consideration the provisions of federal exemption statutes, 42 U.S.C. §§ 659, 662(c) (Supp. III 1978), and the changes which may occur in Charles' retired pay, we direct the district court to enter a supplemental decree upon remand striking present paragraph f from the decree and substituting the following:

> f. Commencing September 1, 1981, and for as long as Charles and Geraldine both live and Geraldine remains unmarried, Charles is required to pay Geraldine through the Scott District Court Clerk on the first business day of each calendar month, as periodic alimony and not as part of Charles' military retired pay or as a division of property, a sum of money equal in amount to 37% of Charles' full, gross military retired pay for that particular month undiminished by any adjustments, deductions, or reductions. In addition, by September 1, 1981, Charles is required to pay Geraldine in one amount as part of the periodic alimony, through the clerk, a sum of money equal in amount to 37% of his total military retired pay from May 1, 1980, through August 31, 1981, undiminished by any adjustments, deductions, or reductions.

Thus if Charles' full, gross military retired pay for a given future month is $800 but Charles remarries and receives less than $800 by virtue of the Survivor Benefit Plan, or he receives less than $800 as a result of any other reduction, he is nonetheless required to pay Geraldine an amount equal to 37% of $800 for that month, if she is alive and still unmarried, as a payment of periodic alimony and not as part of the military retired pay itself.

With the substitution of this paragraph f, we find no merit in Charles' arguments regarding the retired pay.

■■ II. *Split custody.* In trying to foster children's best interests, *In re Marriage of Carrico*, 284 N.W.2d 251, 254 (Iowa 1979), we ordinarily endeavor to keep children of broken homes together. *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511, 517 (Iowa 1976). The rule is not ironclad, however, and circumstances may arise which demonstrate that separation may better promote the long-range interests of children. *In re Marriage of Wahl*, 246 N.W.2d 268, 270 (Iowa 1976) ("they should not be denied this benefit except when their best interests require it"). Children's expressed preferences are entitled to consideration but are not controlling; deciding custody issues is more complicated than merely asking the children which parent they wish to live with. *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979).

■ The trial court was fully aware of these principles. The court stated in its findings of fact:

> The evidence discloses that Charles [Jr.] has certain undesirable habits. He also has a strong influence over William and there is great danger that such influence would have a bad effect on him. William also has expressed a desire to live with Respondent, but such desire is not as strong as in the case of Charles. His age, 12 years old, is such that some consideration should be given to his desire but the same weight should not be given to his stated desire, especially since he gets along well with Petitioner. In view of the special circumstances of this case the Court finds it is in the best long range interest of William that he be placed in the permanent custody of Petitioner with liberal visitation rights in Respondent.

In its conclusions of law the court stated, "However, there is a good and compelling reason why William should be separated from Charles as set forth in the Findings of Fact."

The trial court consulted the various sources of information which were in evidence, and considered the lengthy interrogations of the parties. One of these sources, a psychologist's report, stated in part:

> It is my recommendation to the court, that Charles Shawn be placed in the legal

custody of his father. My reason for this recommendation rests in the strong hostile feelings Charles has toward his mother and her inability to control him. I believe the more disciplined environment would be better for [Charles], but this is outweighed by the expressed hostile feelings.

I recommend that William be placed in the legal custody of Mrs. Jones. Even though this goes against Billy's stated preference, I sincerely believe he will be better placed in the security of Mrs. Jones' care. I am also concerned about the continuing influence Charles may have over Billy if Billy were living with Mr. Jones and Charles.

We have examined the record and find that it fully supports the trial court's findings and conclusions. An extended statement of the circumstances would be helpful to no one, and very possibly harmful to the boys. *See Wright v. Thomas*, 306 Ky. 763, 766, 209 S.W.2d 315, 317 (1948); *Gorslin v. Gibson*, 301 Ky. 706, 707–08, 192 S.W.2d 962, 962–63 (1946). The trial court had the added advantage of being able personally to watch and listen to the parties and the other witnesses. *Jacobs v. Jacobs*, 216 N.W.2d 312, 314 (Iowa 1974). We approve the court's disposition of the custody issue.

III. *Child support—college expenses.* Geraldine contends that the trial court should have allowed her more than $30 per week toward the support of William. Factors to be considered are discussed in our decision of *In re Marriage of Zoellner*, 219 N.W.2d 517, 525 (Iowa 1974).

 We agree that the allowance of $30 is not extravagant in these times, that Charles' earning capacity exceeds Geraldine's capacity, and that Charles has not been earning up to capacity—perhaps in anticipation of this litigation. Nonetheless, with the other burdens laid on Charles in the decree, including his maintenance of Charles, Jr., and the requirement we subsequently impose regarding Jacquelyn, we are unwilling to interfere with the trial court's conclusion on the figure for child support.

As to Jacquelyn, Geraldine's objection is well taken that an amount should be fixed. We think, however, that it should be a *minimum* amount, and we encourage Charles to provide Jacquelyn additional assistance if he is able to do so, in this period of mounting educational costs. We require Charles to pay Jacquelyn at least $1000 annually toward her college expenses commencing September 1, 1980, so long as she continues her college career pursuant to section 598.1(2) of the Code, but not beyond her twenty-second birthday. We direct the district court to alter the original decree appropriately, in the supplemental decree.

We tax the court costs of this appeal to Charles, including the sum of $750 to apply on the fee of Geraldine's attorney.

MODIFIED, AFFIRMED, AND REMANDED WITH DIRECTIONS.