# IN THE COURT OF APPEALS OF IOWA

No. 17-0195
Filed February 21, 2018

**BRIAN ALBERT MAHEDY,**
　　Plaintiff-Appellant,

**vs.**

**AMANDA JEAN GIBSON,**
　　Defendant-Appellee.
_____

　　Appeal from the Iowa District Court for Warren County, Richard B. Clogg, Judge.

　　A father appeals the custody order placing his two children in the physical care of their mother. **AFFIRMED.**

　　Scott D. Fisher of Fisher Law Firm, P.L.C., Urbandale, for appellant.

　　Amanda Jean Gibson, Newton, self-represented appellee.

　　Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Brian Mahedy and Amanda Gibson are the parents of N.G., now eleven years old, and R.G., now three years old. After Brian brought an action to establish custody under Iowa Code chapter 600B (2015), the district court granted joint legal custody and placed physical care with Amanda. On appeal, Brian asks this court to assign physical care of the children to him.

## I.    Facts and Prior Proceedings

Brian and Amanda engaged in an on-again-off-again relationship for several years. N.G. was born in 2006. Although no formal custodial agreement existed, Brian often exercised informal visitation with N.G. on the weekends. Amanda had two children from other relationships. Brian and Amanda reunited in 2013 and R.G. was born in 2014. When their relationship ended, the children remained in Amanda's care.

Brian sought a formal custodial agreement and filed a petition to establish custody in August 2015.[1] Brian and Amanda completed mediation and agreed on a temporary custodial arrangement giving Amanda physical care of the children and granting Brian visitation every other weekend. Initially Brian exercised his visitation without controversy, but the situation changed when Amanda and the children moved to Michigan. On March 25, 2016, Amanda requested visitation stop because of concerning statements made by N.G. about Brian's treatment of her and her brother. In April, the district court denied the motion to suspend

---

[1] Paternity, along with child support, was established in a prior proceeding.

visitation. But visitation did not resume, and Brian brought a contempt action against Amanda.

After a series of delays, Brian's custody petition came to trial in October 2016. In addition to Brian, Brian's mother and sister, and Amanda's ex-husband testified in favor of Brian's petition. Amanda, who did not have an attorney, testified on her own behalf. The district court issued a written decree granting Amanda physical care. The court reasoned it was in the children's best interests to remain in Amanda's care given her long history as their primary caregiver. Because of the geographical distance between parents, Brian was granted visitation on the second weekend of each month and certain portions of holiday and summer breaks. The court also ruled on Brian's contempt motion, concluding Amanda prohibited visitation on twelve weekends since she moved to Michigan. As a remedy, the court granted Brian an additional consecutive fourteen days of visitation during the upcoming summer break. Dissatisfied with the court's ruling, Brian appeals and seeks physical care of the children. Amanda did not file a timely appellee's brief.

## II.    Scope and Standard of Review

We review custody proceedings de novo. *See* Iowa R. App. P. 6.907; *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (noting we use same legal analysis in custody as dissolution proceedings). But "we give considerable weight to the sound judgment of the trial court who has had the benefit of hearing and observing the parties firsthand." *In re Marriage of Kleist*, 538 N.W.2d 273, 278 (Iowa 1995).

Our primary concern is the best interests of N.G. and R.G. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). When determining physical care, we are guided by the factors established in Iowa Code section 598.41(3) *and In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). But because each family presents its own strengths and challenges, our determination is based on the circumstances of the instant case. *See Kleist*, 538 N.W.2d at 276.

### III.    Analysis

We start with the realization joint physical care will not work in the instant case. "Although Iowa Code section 598.41(3) does not directly apply to physical care decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child." *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). Brian and Amanda live in different states and have difficulty communicating effectively—precluding a joint physical care arrangement. *See id.* at 698. Because joint physical care is not appropriate we must grant physical care to one parent and visitation to the other. *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007).

On appeal, Brian focuses on Amanda's failure to deliver the children for his visitation after moving to Michigan. *See* Iowa Code § 598.41(3)(e) (listing as consideration "whether each parent can support the other parent's relationship with the child"). Brian notes his steady job and stable housing with his mother and her boyfriend. But at its core, his argument reflects more his instinct to punish Amanda than a genuine desire to provide the children with a nurturing home life. For

instance, Brian asserts "Amanda should not be rewarded for unilaterally deciding to destroy the children's relationship with their own father." Custody "is not a matter of reward or punishment." *In re Marriage of Teepe,* 271 N.W.2d 740, 742 (Iowa 1978) (citation omitted). The question is which parent can minister more effectively to the long-range needs of the children. *In re Marriage of Barry*, 588 N.W.2d 711, 712 (Iowa Ct. App. 1998).

After reviewing the available record and giving deference to the district court's ability to observe both parents, we conclude Amanda is better suited to serve as primary caretaker. Amanda has served in this role for the entirety of the children's lives. *See* Iowa Code § 598.41(3)(d) (considering parent's caretaker role before and after separation when determining physical care). In contrast, Brian has only tended to the children's needs in a limited capacity. When asked how he would manage his work schedule and parenting duties he indicated he would rely heavily on his family. He also admitted to giving "some thought but not a lot" to how he would provide daytime care to R.G. during the week.

Granting Amanda physical care also allows N.G. and R.G. to live with their half-siblings, and "[t]here is a presumption that siblings should not be separated."[2] *See In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992) (citing *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981)). Amanda provided unrebutted testimony indicating N.G., in particular, was very close with her half-siblings. We will not disrupt such a harmonious sibling relationship without compelling reason. *See id.*

---

[2] The presumption against separating siblings applies to half-siblings as well. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986).

While Amanda's failure to abide by the temporary visitation schedule is troubling, this alone does not sway our conclusion. Both parents have struggled to put their children's needs before their personal squabbles. The district court set out a more feasible visitation schedule than the temporary agreement, making compliance more realistic. We emphasize both parents must comply with the provisions of the decree.

### IV.    Conclusion

For the foregoing reasons, we affirm the district court's decree granting Amanda physical care and visitation to Brian.

**AFFIRMED.**