# IN THE COURT OF APPEALS OF IOWA

No. 23-0481
Filed December 6, 2023

**IN RE THE MARRIAGE OF TYLER McDONALD
AND CHERI McDONALD**

**Upon the Petition of
TYLER McDONALD,**
    Petitioner-Appellant,

**And Concerning
CHERI McDONALD,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for O'Brien County, Shayne Mayer, Judge.

Tyler McDonald appeals from the modification of the decree dissolving his marriage to Cheri McDonald. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Cheri McDonald, Harrisburg, South Dakota, self-represented appellee.

Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Tyler McDonald appeals from the order modifying the decree that dissolved his marriage to Cheri McDonald.  He argues that the district court should have granted him—rather than Cheri—physical care of the parties' only child together mainly because the district court gave insufficient weight to certain factors, including the presumption in favor of placing half-siblings together and Cheri's poor relationship with her other children from prior relationships.  But the district court found that placing their child with Cheri would be in the child's best interests—particularly the child's interest in being supported to have a relationship with *both* parents—even considering the sibling presumption or other concerns.  On our own de novo review, giving the district court's findings the weight they deserve, we agree that placement with Cheri is in their child's best interests.

Tyler also seeks to reverse Cheri's partial attorney fee award of $5000.  But Cheri is still a prevailing party, and he offers no other specific argument that the district court abused its discretion.  We also see no abuse of discretion in the award.  So we affirm.

I.      **Background Facts and Proceedings**

Tyler and Cheri McDonald divorced in February 2020 after less than two years of marriage.  They have one son together, who was seven months old at the time of their divorce.  In the dissolution decree, the court gave them joint legal custody and joint physical care of their son.  When things were working as planned, they were to alternate their care weekly with one three-hour visitation period for the other parent during each week.

Before their divorce was final, Tyler began a new relationship with Kathleen Britten. And a few months after the decree was entered, Tyler and Kathleen's daughter was born. She is about one year younger than Tyler and Cheri's son. Tyler and Kathleen have not married. But they live together with their daughter and another daughter of Kathleen from a previous relationship. Tyler and Cheri's son has a close relationship with his half-sister, and the two siblings share a bedroom when he is in Tyler's care.

While she has no formal legal relationship with him, Kathleen has played an active role in the care of Cheri and Tyler's son and matters related to Cheri's involvement with the son. Kathleen was often included in communications between Tyler and Cheri about arranging visits. Indeed, Tyler essentially delegated nearly all matters about the timing of Cheri's visitation—and even phone communications—to Kathleen rather than working cooperatively directly with Cheri.

The alternating care stopped going as planned in September 2020 when Cheri was arrested and charged with sexual abuse in the third degree. The charges stemmed from an allegation by one of Cheri's older sons, who was born from a previous dating relationship and then adopted by her previous husband, Alan Visser. That son alleged that about seven years before, when he was thirteen or fourteen, Cheri sexually abused him in the bathroom. The charges were eventually dismissed by the county attorney. But not before they deteriorated Cheri and Tyler's relationship further.

After learning of the charges, Tyler refused to return their son to Cheri's care for her alternating weeks. She then filed a contempt action. And in late October

2020, the district court found Tyler in contempt and ordered him to follow the decree. The court reasoned that while Tyler's actions were originally justified, it was unreasonable to continue to refuse to follow the decree after Cheri was released from jail. After the contempt order, the parties returned to alternating weekly care of their son—at least for a while.

Shortly after her arrest, Cheri moved from northwest Iowa to South Dakota—first to Sioux Falls and then a nearby small town. Still, the parties continued to alternate weekly care across the greater distance. But in March 2022, Tyler petitioned for modification alleging a substantial and material change in circumstances since the original decree's entry and seeking sole legal custody and primary physical care of their son. Cheri agreed there had been a substantial and material change in circumstances but sought primary physical care herself.

While the petition was pending, Tyler again began refusing to return their son to Cheri's care because of a new allegation of sexual abuse. This time, another son from Cheri and Alan Visser's marriage accused her of inappropriate sexual touching two or three years before when he was nine or ten and had been sleeping in her bed in only his underwear. The allegations were reported to the Iowa Department of Human Services.[1] At the time of the modification trial, no criminal charges had been filed and Cheri was still appealing the Department's preliminary determination that the allegations were founded. Yet from July 2022 until at least the final modification hearing in February 2023—save for one two-week period—Tyler refused to return their son to Cheri's care in compliance with

---

[1] The Department has since been renamed as the Department of Health and Human Services.

the original decree. So Cheri again filed for contempt, which was scheduled to be heard by the district court at the same time as the modification petition.

Then, while both were still pending, Tyler raised a new set of allegations of improper sexual conduct by Cheri directed toward their son. First, at the end of July 2022, Tyler reported to the Department concerns about an incident when their then-three-year-old son pulled Tyler's hand toward the son's genital area and was also reaching for Tyler's genitals. Tyler expressed concern that this behavior might mean that Cheri improperly touched their son. Later, in October 2022, Tyler reported to the Department that their son was using his tongue to ask for kisses and said that Cheri showed him how to do it and called it a "French." Both allegations were determined by the Department to be unfounded.

Throughout the parties' post-dissolution interactions, they suffered from poor communication. While neither is blameless, Tyler especially failed to involve Cheri in important matters about their son, including changing his daycare multiple times and deciding whether to enroll their son in play therapy. He also once agreed to let Cheri pick up their son when he was sick, and after she drove from South Dakota to do so, he refused to answer the door.

After four days of trial between October 2022 and February 2023—hearing testimony from seventeen witnesses—the district court agreed that Cheri's relocation was a substantial and material change in circumstances justifying modification and granted physical care to Cheri with visitation for Tyler. In a forty-five-page opinion, the court explained that the decision was "difficult" because both parents offered "suitable homes" and Tyler's home included their son's half-sister. But the court reasoned that this was outweighed by concerns that Tyler would

"continue to parentally alienate" their son from Cheri to the point that it "will be impossible for Cheri to salvage a relationship with her son" if Tyler were to be granted physical care. The court pointed to "Tyler's willful and continual denial of Cheri's visitation," his delegation of visitation matters to his new girlfriend Kathleen causing "much disfunction," and his lack of communication with Cheri "about major issues such as daycare and counseling."

The district court did not factor in the allegations of sexual abuse against Cheri because the court found that Tyler failed to present sufficient evidence that any of the alleged abuse occurred. The court also noted that Cheri passed polygraph tests about the allegations, that the criminal charges had been dismissed, and that no new charges had been filed on the later allegations. And the court expressed concern that the accusations from Cheri's older sons may have been driven by their father—Cheri's ex-husband—and his "disdain" for Cheri.[2]

The district court maintained the award of joint legal custody and increased the amount of child support Tyler must pay Cheri to account for the changed physical-care award. The court also held Tyler in contempt—ordering him to pay $1500 in attorney fees as punishment—after finding that he willfully violated the custody order by refusing to follow the joint-physical-care arrangement and

_____

[2] On appeal, Tyler does not challenge the district court's fact-findings and credibility determinations regarding the sexual abuse allegations or argue for physical care because Cheri is likely to abuse their son. So we do not dwell on these difficult issues or the district court's method of resolving them. But we emphasize that because there are many reasons a child-sexual-abuse case may be dismissed by a prosecutor unrelated to the veracity of the reported sexual abuse, such a dismissal is not evidence that the charged abuse never happened. And we do not consider it for that purpose here.

withholding visitation from Cheri. And the court awarded Cheri $5000 in attorney fees—about 20% of her total request—as the prevailing party in the modification proceeding under Iowa Code section 598.36 (2022).

Tyler then asked the district court to amend its decree under Iowa Rule of Civil Procedure 1.904(2), mainly arguing that the court failed to properly consider the presumption that siblings should not be separated when determining physical care. The court explained that it did consider the relationship between Tyler and Cheri's son and his half-sister. But it still granted the motion in part to explain its reasoning as to why the parties' "absolute inability to communicate" and "Tyler's refusal to work towards reunification between Cheri and [their son], outweighed keeping primary care with Tyler," even considering the reduction in time their son will have with his half-sister.

Now, Tyler appeals. He challenges only the decisions placing physical care with Cheri and awarding her $5000 of attorney fees.

## II.     Physical Care

We review a district court's decision to modify the physical-care provisions of a dissolution decree de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *see also* Iowa R. App. P. 6.907. But we recognize that a district court "is greatly helped in making a wise decision about the parties by listening to them and watching them in person" while we "rely on the printed record" and "are denied the impression created by the demeanor of each and every witness." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). We thus give weight to a district court's fact findings even though we are not bound by them. *See id.* (relying "heavily on the trial court's findings of fact" to resolve evidence

"irreconcilably in conflict" when "[t]hose findings were clearly expressed, supported by substantial evidence, and led to a sound and equitable determination of the sensitive" physical-care issue); *see also* Iowa R. App. P. 6.904(3)(g).

Ordinarily, a party seeking to modify a joint-physical-care provision to obtain primary physical care would first need to prove by a preponderance of the evidence that a substantial change in circumstances—more or less permanent and not originally contemplated by the court—arose after entry of the decree. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). If such a qualifying change is found, then the party must show that he or she is "better suited" than the other parent "to minister to the needs of the" child. *Id.* at 444; *see also Melchiori v. Kool*, 644 N.W.2d 365, 368–69 (Iowa Ct. App. 2002). But here, the parties agree that there has been a substantial change in circumstances and neither seeks to continue joint physical care. So we—like the district court—focus our attention on which parent can best care for their child.

In making this decision, "the child's best interest is the overriding consideration." *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). The factors in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), guide us. *See Fennelly*, 737 N.W.2d at 101. And our goal "is to place the child[] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

In a detailed and thoughtful ruling, the district court concluded that Tyler and Cheri's son should be placed in the physical care of Cheri. The court scrutinized the extensive evidentiary record that was well-developed by the parties. It weighed

the relevant factors required by our caselaw. And it found the decision on who would be the better parent "difficult," given the relative merits and concerns about each. But the court ultimately found that Tyler's past actions demonstrated that placement of primary physical care with him would not support their son's relationship with Cheri. *See* Iowa Code § 598.41(3)(e) (requiring consideration of "[w]hether each parent can support the other parent's relationship with the child"); *see also id.* § 598.41(3)(c) (requiring consideration of "[w]hether the parents can communicate with each other regarding the child's needs").

Tyler argues that the district court did not give sufficient weight to the interests of their son in not being separated from his half-sister who resides in Tyler's home with her mom, Kathleen. Tyler is correct that "[i]n trying to foster children's best interests, we ordinarily endeavor to keep children of broken homes together." *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981) (internal citation omitted). The supreme court has explained that children of broken homes are "the innocent victims of marital bankruptcy" who should not be denied "the benefit of constant association with each other" unless "their best interests require it." *In re Marriage of Wahl*, 246 N.W.2d 268, 270 (Iowa 1976). And these principles apply whether the children are full siblings or half-siblings. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). But even if this presumption applies to a later-born half-sibling who was never a part of the dissolved marriage home, it is "not ironclad" and can be overcome when other interests outweigh the benefits of a placement together. *Jones*, 309 N.W.2d at 461.

The district court made precisely that judgment call here. And we agree. Tyler and Cheri's son's long-term interests in having his primary caregiver support

his relationship with his other parent and communicate about his needs outweigh the somewhat increased contact with his half-sister that would occur if he were placed in her home. *See In re Marriage of Quirk–Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) (holding that parent's attempt to limit child's contact with other parent was a compelling reason to separate half-siblings and place child with the other parent); *see also* Iowa Code § 598.41(1)(c) ("The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement."). This is all the more so given that the parties continue to have joint legal custody and Tyler has been awarded visitation rights that should allow the half-siblings significant association with each other. *See In re Marriage of Pundt*, 547 N.W.2d 243, 246 (Iowa Ct. App. 1996).

Tyler also contends that the district court should have given greater weight to the poor quality of Cheri's relationships with her older children. He points specifically to the fact that two older sons accused her of sexual abuse as evidence of an estrangement that shows Cheri will eventually become estranged from their son too. But the district court did consider these relationships—noting that the parties agreed "that Cheri does not have close relationships with her other children" for reasons that "are unclear." And the court carefully parsed through the evidence surrounding the allegations of sexual abuse before finding them unproven. Particularly when there are lurking concerns that the relationships with her older children have been aggressively undermined by Cheri's former husband, we agree with the district court that this is not a basis to deprive Tyler and Cheri's son from the best opportunity to keep strong relationships with both of his parents.

No doubt, both Tyler and Cheri love their son and could provide a good home for him. But Tyler's consistent actions depriving their son of a full relationship with Cheri and failing to involve her appropriately in decision-making tip the balance in deciding who will be the better parent. Granting physical care to Cheri and visitation rights to Tyler best serves the long-term interests of their son. We thus affirm the district court's physical-care decision.

### III.    Attorney Fees

Tyler further argues the court abused its discretion in ordering him to pay $5000 of Cheri's trial attorney fees and the court costs for the modification proceedings. In a modification proceeding, the district court has discretion to "award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. An award of trial attorney fees lies in the sound discretion of the district court. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). The key factor to be considered is "the parties' respective abilities to pay." *Id.* And the ruling will not be altered on appeal in the absence of an abuse of discretion. *In re Marriage of Wessels*, 542 N.W.2d 486, 491 (Iowa 1995).

Tyler is correct that *if* we had reversed the district court's physical care ruling, Cheri would no longer be "the prevailing party" eligible for an award of attorney fees. *See* Iowa Code § 598.36. But we have not. And Tyler makes no other specific argument about how the district court abused its discretion in awarding attorney fees. The district court did not abuse its discretion in awarding Cheri some of her trial attorney fees and costs.

**AFFIRMED.**