# IN THE COURT OF APPEALS OF IOWA

No. 23-1492
Filed April 10, 2024

IN RE THE MARRIAGE OF CASSIDY JANE MILLER
AND CHRISTIAN EPHRAIM MILLER

Upon the Petition of
**CASSIDY JANE MILLER,**
  Petitioner-Appellant,

**And Concerning**
**CHRISTIAN EPHRAIM MILLER,**
  Respondent-Appellee.

_____

  Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


  A mother appeals the district court decision placing the parties' minor child in the father's physical care. **AFFIRMED.**


  Patrick H. Payton and Sarah M. Yaske of Patrick H. Payton & Assoc., P.C., Des Moines, for appellant.

  Stephen Babe of Cordell Law, LLP, Des Moines, for appellee.


  Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Cassidy Miller appeals the district court decision placing the parties' minor child in Christian Miller's physical care. We determine it is in the child's best interest to be placed in Christian's physical care. We also determine the district court did not abuse its discretion in denying Cassidy's request for trial attorney fees. Accordingly, we affirm the district court. And we decline to award either party appellate attorney fees.

## I. Background Facts & Proceedings

Cassidy and Christian were married in May 2019. They have one child, G.M., who was born in December 2020. The parties separated in October 2021, and Cassidy filed a petition for dissolution of marriage the following month. An order on temporary matters granted the parties temporary joint legal custody and joint physical care, with the parties exchanging the child on a week-to-week basis. Christian was ordered to pay child support of $350 per month. The temporary order was in effect for approximately eighteen months prior to trial.

The dissolution trial was held in May 2023. Christian testified he was working as a youth services worker at the State Training School when the parties married. He then worked at Iowa Select Farms in swine production for three years. He left that job after the parties separated to become an agricultural teacher for a school district. He is also a wrestling coach and Future Farmers of America (FFA) advisor. He earns about $49,000 per year. At the start of the dissolution trial, Christian was delinquent in his child support obligation by $3535. He paid the delinquency in full on the second day of the trial. Christian lives in New Providence with his girlfriend, Audrey.

Cassidy has physical care of a child, K.F., from a former relationship, who was five years old at the time of the trial. K.F. attends daycare when Cassidy is at work. He is not in preschool. During the marriage, Cassidy had a series of short-term jobs. She was employed at the sheriff's office, a children's center, a golf course, and a healthcare provider. Cassidy did not work outside the home from April 2021 until April 2023. She is currently working in the horse stables at Prairie Meadows about six hours a day, five or six days a week, and is paid $100 for each shift. She started this employment about a month before trial. Using her new wages, her annual income equates to about $26,000. Cassidy lives with a friend, Nicholas, in Pleasant Hill. Nicholas does not charge her rent and provides her with a car to drive.

The district court issued a dissolution decree for the parties in August. The court granted the parties joint legal custody of G.M., with Christian having physical care. The court found:

> In evaluating the evidence and weighing the relevant factors, the Court concludes that the factor of stability weighs heavily in this case. There is a distinct difference between the stability of the two parties. The Court does not believe Cassidy has stable housing, transportation or employment. Christian on the other hand, has demonstrated a great deal of stability [in] all of those areas. This is a factor that tips the scale in the favor of Christian.

Cassidy was granted visitation on alternating weekends, alternating holidays, and two weeks in the summer. She was ordered to pay child support of $301.29 per month. Cassidy appeals the physical care provisions of the dissolution decree.

## II. Standard of Review

We review dissolution of marriage decrees in equity. *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 50 (Iowa 1999). In equitable actions, our review

is de novo. Iowa R. App. P. 6.907. "In such cases, '[w]e examine the entire record and adjudicate anew rights on the issues properly presented.'" *Knickerbocker*, 601 N.W.2d at 50–51 (alteration in original) (citation omitted). "In equity cases, especially when considering the credibility of witnesses, the appellate court gives weight to the fact-findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

### III.    Physical Care

**A.**    Cassidy asks us to consider placing the child in the parties' joint physical care. She highlights that the parties successfully shared physical care under the temporary order. But Cassidy acknowledges that once the child starts school, "the parties may need to accommodate the child's school schedule or agree to a certain school district."

In considering whether joint physical care is in the child's best interest, the court looks at these factors:

> (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 699 (Iowa 2007)).

Greater primary care experience is one of many factors the court considers, but it does not ensure an award of physical care. *In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa 1995). While the factor of greater primary care experience is considered in the context of established joint custody principles, it does not

necessarily distinguish the more experienced parent as the preferred physical caretaker. *Id.* The parent awarded physical care must also possess those parental attributes that are consistent with the obligations inherent in a joint custody arrangement. *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996). "Most notable among these is the ability to set aside understandable resentments and act in the best interest of the child." *Id.*

On the issue of joint physical care, the district court stated:

> The major obstacle to resolving the parties' disagreement regarding the physical care of G.B.M. exists because the parties have elected to live an hour apart from one another. While the separation has little impact on the child while he is in daycare, the greater problem looms if the parties are granted joint physical custody. It seems impractical to even attempt to create a workable solution for raising a child an hour away from his school district every other week. As such, the Court finds that not residing in the same school district and residing approximately an hour's travel time apart ultimately creates problems in joint parenting that cannot be overcome. Each party is an excellent parent, but given the distance and travel time, it would be inappropriate to order joint physical custody permanently. The Court, therefore, finds that shared physical care is not in the child's best interest because of the distance between the parties' homes. As such, the Court must determine a [physical] care parent.

We agree with the district court's findings on this issue. The parties were able to have joint physical care under the order on temporary matters because G.M. was not yet in school. Christian plans to enroll the child in full-time preschool in the fall of 2024. And G.M. will start kindergarten in the fall of 2025. As the child gets older and starts school, the distance between the parents' homes makes joint physical care unworkable. It would not be in the child's best interest to require him to travel one hour to school and then one hour back every other week. We conclude joint physical care is not in the child's best interests.

**B.** Cassidy contends the district court should have placed the child in her physical care. She states that she has superior child-raising abilities, and she consistently placed the child's interests first. She asserts that Christian's housing situation is not more stable than her housing situation, as he began living with his girlfriend just a few months before the dissolution hearing, while she had been living with Nicholas for about one and one-half years. She notes that while Christian's employment may be more stable, her employment is more flexible. Cassidy also points out that Christian was delinquent in his child support obligation at the beginning of the dissolution hearing. Furthermore, she states G.M. has a close relationship with his sibling, K.F., and the court should not have separated them.

The court considers the factors in Iowa Code section 598.41(3) (2021) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), in determining what physical care placement is in the best interests of the child. Courts look for a placement that will best promote the long-term physical and emotional health of the child. *Hansen*, 733 N.W.2d at 700. Each decision is based on the unique facts of the case. *Id.* "In child custody cases, the first and governing consideration of the courts is the best interests of the child." Iowa R. App. P. 6.904(3)(n); *In re Marriage of Roberts*, 954 N.W.2d 757, 760 (Iowa Ct. App. 2020).

Although we are not bound by the district court's factual findings, we give weight to the court's credibility findings. *See* Iowa R. App. P. 6.904(3)(g). "There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and

watching them in person.'" *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted).

After hearing the parties at the dissolution trial, the court had concerns about Cassidy's stability in housing, transportation, or employment. Cassidy does not have a rental agreement with Nicholas, and she pays no rent. At one point, Cassidy, Nicholas, and Cassidy's two children were living in a motel room. Nicholas also provides a vehicle for her, as well as providing maintenance and insurance. Nicholas's assistance could cease at any time, leaving Cassidy without a home or a vehicle. For Cassidy's employment, she is paid $100 per day for the days she works. In the past, Cassidy had a number of short-term jobs. We agree with the court's concerns about Cassidy's stability. There are not the same concerns about Christian, who is renting a house and has stable employment. While delayed, Christian is now current on his child support obligation.[1]

The issue that gives us pause is that by placing G.M. in Christian's physical care, the child will be separated from his half-sibling, K.F. The two children are close in age. Generally, we try to keep siblings together. *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981). And courts have previously noted that separation of siblings adds to the trauma of parental divorce and further destroys the remaining semblance of familial ties. Jay M. Zitter, Annotation, *Child Custody: Separating Children by Custody Awards to Different Parents—Post–1975 Cases,*

---

[1] We are not condoning the previous delinquency. A mandatory wage assignment was in place following the temporary order, but neither party took steps to obtain a new wage assignment order after Christian switched employment. But it was Christian's responsibility, not Cassidy's, to ensure his child support was current under the temporary order.

67 A.L.R.4th 354, 360 (1989).  This principle applies to half-siblings as well.  *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986).  But "the rule is not ironclad, however, and circumstances may arise which demonstrate that separation may better promote the long-range interests of children."  *Jones*, 309 N.W.2d at 461.

We conclude it is in G.M.'s best interests to be placed in Christian's physical care.  G.M. will still be able to interact with K.F. when he is at Cassidy's home for visitation.  K.F. spends time with his biological father, which resulted in the siblings being separated for short periods of time previously.  And for the last eighteen months, the children were together only fifty percent of the time pursuant to the temporary order.  Ultimately, we find that placement with Christian "will best promote the long-term physical and emotional health of the child."  *See Hansen*, 733 N.W.2d at 700.  Christian is able to provide a stable environment for the child. *See Winter*, 223 N.W.2d at 166.  We affirm the district court's decision placing the child in Christian's physical care.

## IV.    Attorney Fees

**A.**    Cassidy asserts the district court should have awarded her trial attorney fees.  She points out that Christian makes about $49,000 per year, while she makes about $26,000 per year.  She claims Christian has a far superior ability to pay attorney fees.  The district court did not award any trial attorney fees.

A district court's award of attorney fees is reviewed for an abuse of discretion.  *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).  "An abuse of discretion occurs when the district court exercises its discretion "on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable."  *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012) (citation omitted).  "A

ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (citation omitted).

While Cassidy does not earn as much as Christian, she has less expenses, as Nicholas covers the costs of her housing and transportation. We determine the district court did not abuse its discretion by requiring Cassidy and Christian to pay their own trial attorney fees.

**B.** Cassidy and Christian each seek an award of appellate attorney fees.[2] "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel,* 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (citation omitted). When considering whether to exercise our discretion we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland,* 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted).

Looking at these factors, especially the parties' ability to pay attorney fees for the other party, we find each party should pay their own appellate attorney fees. We decline to award either party appellate attorney fees.

**AFFIRMED.**

---

[2] Christian submitted an affidavit showing he has appellate attorney fees of $6965.